Dattoíí, J.
This action, as appears by the above state of the case, was brought against the defendants, for refusing the plaintiff’s vote at a popular election. The facts are all admitted, and the only question submitted to this court is, whether or not the defendants, (two of the judges of election,) did right in rejecting the plaintiff’s vote; if not, it is agreed that judgment he entered for the plaintiff, with six cents damages.
By the fourth section of the act, Rev. L. 740, it was enacted, “ that from and after the passing of this act, no person shall vote in any state or county election, for officers in the government of the United Slates or of this state, unless such person be a free white male citizen of this state, of the age of twenty-one years, worth fifty pounds proclamation money, clear estate, and hath resided in the county where he claims a vote, for at least one year immediately preceding the election.”
It was under this act that the vote of the plaintiff was offered, and it was upon the last clause thereof, that it was rejected.
The judges of election, from the haste incident to a decision made at the polls on election day, or from the want of proper reflection and advisement, have fallen into a manifest error. Upon the facts stated and proved at the poll, it is difficult to imagine how any serious question could have been made, as to the plaintiff’s right to vote. It is understood to have been on the ground that he had with his family, spent the preceding winter in the city of Philadelphia, and that he consequently had not been a resident in the county, for one year at least immediately preceding the election. If this were the basis of the decision, it must have originated in the judge’s confounding the idea of a legal residence, with a mere temporary stay.
When the statute required, that the voter should have resided in the county &c. it meant that he should have had his home there. In the seventh section, the right to vote was limited to that township in which he usually resided &c. It did not mean however, that he must have eaten and lodged there continuously for the space of a year, to entitle him to his vote. It did not mean, that he was not to absent himself during the year, for special purposes of pleasure, or business, either with or without his family. It meant nothing more than that he should have his home, his residence, within the county, for such space of time. *144 It is important therefore, that we understand what the law means by residence. The word residence, (fixed residence I mean,) is generally used as tantamount to, domicile; though I am not prepared to say whether they are or are not in all respects, convertible terms.
Thus in Guier v. O’Daniel, 1 Binn. R. 352, n., it is said that a domicile may be defined to be a residence at a particular" place, accompanied with positive or presumptive proof of continuing it an unlimited time. So Kent, in his comfnentaries, vol. 1, p. 76, in treating of national residence, speaks of it as tantamount to national domicile; and Vattel has defined it in substantially the same way. Judge Story says, that domicile in a legal sense, is where the person has his true, fixed and permanent home and principal establishment, and to which whenever he is absent, he has the intention of returning. Story’s Conflict of L. 39. Such domicile once obtained, remains to the possessor thereof, notwithstanding occasional visits to foreign countries, and until other domicile is acquired. The Friendschaf v. Winn et al. claimants, 3 Wheat. R. 14; The Nereide, Bennett, master, 9 Cranch, 388; Jennison v. Hapgood, 10 Pick. R. 77; Bruce v. Bruce, 2 Boss. and F. 228; Harvey v. Richards, 1 Mason C. C. R. 408; Richards v. Dutch, 8 Mass. R. 506; Dawes v. Boylston, 9 Mass. R. 337. This principle is applied to cases of national residence; and so in pauper cases, it is applied to questions of domestic settlement. The settlement or legal residence of a pauper, is prima facie at the place of his birth, and this settlement continues until a new one is gained; there can be no suspension of it; 3 Burns Just. 365, 488; St. John’s Wapping and St. Botolph’s Bishopgaie, Burr. Sett. Cas. 367. I do not mean to say that the elective franchise of the citizen, may not be suspended; for, pending the year’s residence required by our statute, the fact is so; but I mean to say, that a residence at law once obtained, continues without intermission until a new one is gained.
It is not pretended, that the plaintiff ever acquired a legal residence in Philadelphia; on the contrary, he has always disclaimed it; not only in conversation with his friends, but before the judges of election, upon his oath. He has never exercised, or pretended to claim any rights, civil or political, except as a citizen of New Jersey. He lived, at the time he offered his vote, *145 and still continues to live in that domicile which had sheltered himself and his immediate ancestors, for. more than one hundred years. It is rare indeed that among the bustling, locomotive population of this country, an individual can be found, who can show such unequivocal proof of a fixed residence as has been shown by the plaintiff in this case. That he passed the winter preceding the election, in Philadelphia, was wholly unimportant; it did not change his residence, in law. In Story's Conflict of L. p. 46, it is said, that if a married man has two places of residence at different times of the year, that will be esteemed his domicile, which he himself selects, or describes or deems to be his home, or which appears to be the centre of his affairs, or where he votes, or exercises the rights and duties of a citizen. But again it is said, that the place where a married man’s family resides, is generally to be deemed his domicile: but it is otherwise, if it be a place of temporary establishment for his family, or' for transient objects only. See also, Somerville v. Somerville, 5; Ves. 750, 788, 789; Harvard College v. Gore, 5 Pick. 377.
The place where a man is commorant, may perhaps be properly considered as prima facie, the place of his legal residence;. this presmption however, may be easily overcome by proof of facts to the contrary. If a person leave his original residence, animo non revertendi, and adopt another (for a space of time, however brief, if it be done) animo manendi, his first residence is lost. But if in leaving his original residence, he does so, animo revertendi, such original residence continues in law notwithstanding the temporary absence of himself and family. Such is the uniform language of the books, as well as the clear conclusion of common sense.
If the principle adopted by the judges of election, be the true one, to wit: that a gentleman who, desiring to escape the seclusion of a country residence, spends the winter in Philadelphia ■with his family, cannot be considered as legally residing in New Jersey, during that time, let us carry the principle out, and see where it will lead us. The election laws of our sister states are substantially like our own in this respect. The voter must at least have been a resident for a specified time &e.: yet hundreds of the most intelligent and influential residents of the neighboring cities, are in the habit yearly of closing, their city houses, *146 and retiring with their families to their respective country seats, that they may escape the dust and heat of the city during the summer months. Almost every part of New Jersey is dotted with these country seats of the citizen :• and has it ever been supposed, that by spending the summer with us, they were disfranchised at home? Such a doctrine would make an immense class of persons, (whose influence and stake in the community as property holders, are greatest,) mere political vagrants.
But again, many of our Senators and Representatives in Congress, habitually close their houses at home and move with their families to Washington, during the winter. Some rent rooms, and others rent houses, and they remain there sometimes two thirds of the year without even a visit to their respective homes: and yet, has any man ever supposed that in the eye of the law, they were not residing in the state of New Jersey, all that time ? What would one of the learned counsel of the defendants, in this very case, think of a challenge being interposed to his vote at the coming election, on the ground, that he had not resided in the state for one whole year prior thereto! And yet, if the judges of election were right in the plaintiff’s case, I believe that in point of fact, there would be the same grounds for a challenge in his. There is no distinction made by the law or the statute in favor of those who are public officers, and leave their residences to attend upon public business. It is all left to depend upon the same general principle, that a man’s legal residence is not changed where he leaves it for temporary purposes and transient objects, meaning to return when those purposes are answered and objects attained.
It is for this reason, that the students of our colleges, the inmates of our law schools and medical universities, and hundreds of others who are scattered on land and sea, engaged for the time being, in the prosecution of some transient object, are considered in law, as residing at their original homes, although in point of fact, they may be living for the time being, elsewhere. Upon the same principle, the Supreme Court of New York decided, that a man who was a subject of Great Britain, was an absent deotor, a non-resident, within the meaning of their attachment act, although in point of fact, he was actually present within the state, at that time, meaning however, to leave it as *147 soon as some temporary business was settled. Munroe v. Allaire, 2 Caines’ R. 318.
The proof offered before the judges of election, as to the intention of the plaintiff i. l leaving his country residence, and spending the winter in the city, was so clear as to put that, the all important question in such cases, beyond a doubt. Indeed, there was not a particle of evidence offered to gainsay it. It was admitted, that he had had a legal residence in the township of Ewing, where he offered his vote, that he left it in possession of his servants : himself visiting and directing the labor done on the farm attached to his mansion hoqse, during the winter; meaning to return, and actually returning and taking possession of the same residence in the spring, and continuing to reside there up to this time. The case is so clear of all doubt, that l would not have considered myself called upon to prepare this opinion, had it not involved that right which is specially dear to every American citizen : a right, which more than any other, requires that courts, when compelled to adjudicate upon it, do it openly and upon public assignment of the grounds of their adjudication.
Judgment must be entered for the plaintiff, pursuant to the provisions of the case agreed upon.
The Chief Justice, and all the other Justices concurred in all things.

Judgment for plaintiff.

Cited in State v. Ross, 3 Zab. 525-527; Bonnel v. Dunn, 4 Dutch. 155; State v. Gasper, 7 Vr. 368; Leonard v. Stout, 7 Vr. 377; Coddington v. Coddington, 5 C. E. Gr. 265.