233 N.J. Super. 634 (1989)
559 A.2d 879
PATRICIA D. BORDEN, IN HER OFFICIAL CAPACITY AS CITY CLERK OF THE CITY OF BORDENTOWN, IN THE COUNTY OF BURLINGTON, PLAINTIFF,
v.
SALLY LAFFERTY, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided April 12, 1989.
*635 Edward A. Kondracki for plaintiff (Davis, Reberkenny & Abramowitz, attorneys).
John G. Dyer, III for defendant (Dyer, Hendren & Harrington, attorneys).
HAINES, A.J.S.C.
Sally Lafferty is a candidate for election to the board of commissioners in the City of Bordentown, County of Burlington. She is not eligible to run for that office, however, unless she has been a resident of the city for at least one year prior to May 9, 1989. Patricia D. Borden, the city clerk, doubts her eligibility and has filed this declaratory judgment action in order to resolve that doubt. This opinion, following a trial of that issue, concludes that Sally Lafferty is entitled to run for the office she seeks.
She and her husband John purchased a substantial dwelling at 20 Prince Street in Bordentown, New Jersey: their "dream home." The price was $242,000. The contract for the sale of *636 the premises was executed by them on January 19, 1988. They consummated the purchase on May 2, 1988 when the deed conveying title to them was delivered. On January 19, 1988, they owned two properties, their own home in Pennington and a second dwelling in Trenton. They were obliged to sell both of them in order to meet the financial obligations they were assuming in order to purchase the Bordentown dwelling. Both properties were therefore listed for sale promptly after they executed the Bordentown contract. On February 20, 1988, they applied for and later obtained a "bridge loan," permitting them to borrow enough money to complete the purchase of their new home in the event they were not able to sell their other properties. This was not necessary; the Bordentown contract was cancelable if the properties were not sold within 90 days. They decided, however, not to take advantage of this contingency. They were successful in selling the Trenton property before May; the Pennington home was not sold until June.
Sally Lafferty had no intention of running for local office when she and her husband decided upon the Bordentown move. They wanted to live in a small town environment, in a house they loved from which their children could walk to school.
Although the Laffertys acquired title to the Bordentown property on May 2, 1988, they spent most of their time in the Pennington residence while going back and forth between their old and new homes with some frequency. Sally Lafferty spent weekends in her Bordentown home and lunched there nearly every weekday since it was convenient to her place of employment. Furniture and bedding were moved from Pennington to Bordentown. Clothes were washed in Bordentown.
Title of the Pennington home was transferred to a buyer on August 12, 1988, and the Laffertys moved completely to Bordentown. Until then most aspects of their lives related significantly to Pennington, not Bordentown. Their children continued to go to the Pennington schools and to reside physically in the Pennington dwelling. John Lafferty was physically present *637 there nearly every day and Sally Lafferty was there every school night. She did not change the address on her driver's license and motor vehicle registration or register to vote in Bordentown until October. No request for the installation of a telephone in Bordentown was made until June; church allegiances were transferred from Pennington to Bordentown in November. Postal notices changing the Lafferty address to Bordentown were sent in August 1988.
Patricia Borden, the city clerk, testified that the city's water records showed the consumption of only a modest amount of water in the Bordentown property between May and August 1988, indicating that the use of the property was not extensive. Alexander T. Csapo, Jr., a Bordentown neighbor of the Laffertys, testified to the absence of activity around 20 Prince Street during the months of May and June.
The residency requirement at issue here is found in N.J.S.A. 40A:9-1.13. It provides in pertinent part that
no person shall ... be eligible to become a candidate for any local elective office ... unless he is registered to vote in the local unit to which the office pertains, and has been a resident of that local unit for at least one year immediately prior to the date upon which the election for the office is to be held....
The term "resident" used in this statute is defined in N.J.S.A. 40A:9-1.11d as:
a person having, within the territorial limits of the local unit, a place of abode, which has not been adopted for any mere special or temporary purpose, but is his ordinary and permanent domicile.
The meaning of "domicile," while never considered in the setting provided by this statute, has been addressed in numerous cases. Our Supreme Court in State v. Benny, 20 N.J. 238 (1955), a voting case, said:
Domicile has been variously defined as the place where a person "has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning", Story, Conflict of Laws (8th ed.), sec. 41, p. 40, or "the habitation fixed in any place, without any present intention of removing therefrom"....
........

*638 It is everywhere conceded that a person can have only one true domicile, which is synonymous with a common understanding of the word "home." [at 250-251; citations omitted]
Benny quoted from State v. Garford Trucking, Inc., 4 N.J. 346 (1950), in which the Court said:
For a natural person, domicile of choice is essentially a question of residence and intention  of factum and animus. Ordinarily, domicile includes residence; but one may have several residences or places of abode or business. The basic concept underlying domicile is that of home, although one without a home has a domicile assigned by the law. [at 353]
Benny held that persons who voted from a "temporary or seasonal residence" were guilty of misdemeanors. The Court pointed out the reasons for prohibiting such voting:
Responsible voting can be expected only where voters voting at the polls owe allegiance to the State and locality wherein they are domiciled and wherein they exercise their franchise. The necessary attributes of domicile, i.e., sending children to local schools, being concerned with local problems, reading local newspapers, having knowledge of local needs and desires, and above all, having a genuine desire to accept the responsibilities incident to such status and make that "home" a better place to live, all become important factors to be considered in obtaining reliable results from popular elective systems. [20 N.J. at 255]
In Worden v. Mercer Cty. Bd. of Elections, 61 N.J. 325 (1972), the Court said:
In Cadwalader [Cadwalader v. Howell and Moore, 18 N.J.L. 138 (Sup. Ct. 1840)] ... the Court construed the statutory residence requirement in the election law to mean "domicil" which the common law viewed as one's fixed or permanent home to which, whenever temporarily absent, he has the intention of returning. [61 N.J. at 332]
The opinion pointed out that the definition of domicile may be applied differently in different cases by emphasizing one element of the definition instead of another. Id. at 343-344.
The Worden majority, after discussing domiciliary requirements, decided that college students had a right to vote in the college community. Chief Justice Weintraub, concurring, would have liberalized the domicile requirement further. He said:
The concept of domicil is not constant. It is designed to assure fairness to the individual or the State in a given setting. Its ingredients, therefore, will vary, depending upon what is just and useful in a given context.
Here the subject is voting. Basic is the thought that a citizen is entitled to vote to further his political interests as he sees them. Everyone has a political *639 interest everywhere he resides. It is the protection of that interest which the concept of domicil must reflect if it is to be other than arbitrary.
A man who resides in more than one place has more than one set of such interests. The right to vote being his, he, and he alone, can decide which interests are more important to him, and that decision should be final unless the State can demonstrate some public need to say some interests of his shall predominate over others. I do not know how the State could make that evaluation in our complex society ... Except for that academic situation [voting by "floaters" to obtain a residence for the sole purpose of voting in a local election], I see no basis for the State to deny a man the right to vote where he resides or to decide for any voter that he ought to vote from one abode rather than another. [Id. at 349-350]
In Petition of Hartnett, 163 N.J. Super. 257 (App.Div. 1978), the court spoke of domicile as follows:
Although the New Jersey Constitution and election statutes speak in terms of residence requirements, it has long been held that the normal test of voter qualification is that of a domicile maintained in the State and voting district. And where a person has and maintains a permanent home in the voting district he has the right to vote in that district despite his temporary absence therefrom, provided that he does not vote elsewhere and the factual context reveals his intention to return to that home as his permanent abode. [at 263; citations omitted]
In Citizens Bank & Trust Co. v. Glaser, 70 N.J. 72 (1976), a tax case, the Court said:
Where there are multiple residences, as here, domicile is that place which the subject regards as his true and permanent home. [at 81]
The definition of "resident" contained in the statute considered here is somewhat different and at least as liberal as the definition found in our cases. Since, however, the statute refers to "domicile," case law discussions of that term provide helpful illumination.
The reasons underlying the residency requirement for candidates for local offices are no different than those set forth for voters in Benny, supra, 20 N.J. at 255. The public concern is that candidates run for office in the place of their most significant interests, political and otherwise, where they have knowledge of local conditions, and where they hope to assume a constructive responsibility on behalf of all local citizens. True "domicile" and a required term of residence obviously advance this concern.
*640 In the present case, if reliance is placed primarily upon the ordinary criteria of domicile, e.g., voting registration, automobile license and registration, school, church and physical presence, it would have to be concluded that the Laffertys did not become domiciled in Bordentown until after May 9, 1988. However, these criteria are outweighed by others. The important element of domicile is intent. The Laffertys, on the crucial date, May 9, 1988, owned two residences. As the Supreme Court said in Benny, "a person can have only one true domicile, which is synonymous with a common understanding of the word `home'." 20 N.J. at 251. Our cases define domicile as the place where a person "has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." Id. at 250. Finally, Benny, referring to the necessary attributes of domicile, stressed one "above all": "having a genuine desire to accept the responsibilities incident to such status and make ... `home' a better place to live...." Id. at 255. It is these requirements which the Laffertys so clearly satisfy.
Well in advance of May 9, 1988, they decided to live in Bordentown and agreed to purchase their permanent home there. They committed a substantial amount of their resources to that purchase. Promptly after doing so and before actually taking title, they set in motion all of the necessary actions required to dispose of their other properties, including their former domicile in Pennington, borrowed substantial moneys in order to be sure that they could acquire the Bordentown property, and began moving their belongings. They made all necessary plans to move to their new home as soon as they were able to do so. Economically, emotionally and rationally, they became domiciled in Bordentown on May 2, 1988. The delay in their physical transfer from Pennington to Bordentown was not a delay of intention or desire. It was the practical and necessary result of satisfying their children's need to finish a few weeks of schooling and the further need to consummate the sale of the Pennington dwelling. These arrangements *641 permit the casual observer, unaware of the true intentions and solid commitments of the Laffertys, to conclude, knowing only the ordinary criteria of domicile, that they were domiciled in Pennington. That conclusion is untenable when the true facts are known. Physically, the Laffertys were in Pennington but the parts of them that count, their hearts and their heads, were in Bordentown. It is there that they became domiciled on May 2, 1988.
The residency statute should not be so interpreted that it frustrates the electoral plans of local candidates. Election statutes are to be construed liberally to avoid disenfranchising voters. Wene v. Meyner, 13 N.J. 185, 197 (1953). The same rule of construction should apply to statutes affecting the equally important right to be a candidate for public office. The Legislature cannot have intended so narrow a reading of the residency law that it denies the candidacies of persons having bona fide and substantial residential roots in a community. "It is a settled tenet of statutory construction that regard must be had for the manifest intent of the Legislature, and, accordingly, words in a statute must be interpreted in context to serve the spirit of the law." In re Application of Moffat, 142 N.J. Super. 217, 230 (App.Div. 1976).
N.J.S.A. 40A:9-1.11d (repeated for convenience) provides:
"Resident" means a person having, within the territorial limits of the local unit, a place of abode, which has not been adopted for any mere special or temporary purpose, but is his ordinary and permanent domicile.
When the required rules of construction are applied and this language is fitted to the facts, it is apparent that Sally Lafferty is a "resident." Obviously, she and her husband had "a place of abode" in Bordentown on May 3, 1988. It was a place of abode not "adopted for any mere special or temporary purpose"  it was their permanent home, their "ordinary and permanent domicile."

*642 CONCLUSION
The Laffertys became "residents" of the City of Bordentown prior to May 9, 1988, and Sally Lafferty is qualified to run as a candidate for commissioner.