FRANK PERRI, CONTESTANT-RESPONDENT, v. JACOB B. KISSELBACH, INCUMBENT-APPELLANT.

Argued October 24, 1960—Decided January 23, 1961.

Mr. *Benjamin A. Rimm* argued the cause for appellant (*Mr. Irving A. Lilienfeld,* attorney; *Mr. Benjamin A. Rimm,* of counsel).

Mr. *Irving I. Jacobs* argued the cause for respondent (*Mr. Robert N. McAllister, Jr.,* attorney; *Mr. Irving I. Jacobs,* of counsel and on the brief).

The opinion of the court was delivered by

SCHETTINO, J. This is an election case involving the validity of absentee-ballot votes. The appeal is from a Law Division judgment invalidating certain of the votes and awarding a certificate of election to the respondent. While the appeal was pending in the Appellate Division, we certified it on our own motion. *R. R.* 1:2–1.

Appellant and respondent were rival candidates for the office of Councilman in the City of Northfield, Atlantic County, on election day, November 3, 1959. Appellant received 402 votes, three of which were absentee ballots, and respondent received 401 votes. The three absentee ballots were cast by Henry Haker, Stephen Parker and Clare E. Presgrove. On November 18, 1959 respondent filed a petition to contest the election on the ground that the absentee ballots were illegal and were sufficient in number to change the result. The trial court held that Haker's and Parker's

ballots should not be counted because neither voter was a resident of Northfield and, as this determination was sufficient to change the result of the election, it expressly refused to decide the legality of the Presgrove vote.

Appellant contends that the petition contesting the election should be dismissed because it was not signed by respondent, the defeated candidate, as required by *N. J. S. A.* 19:29–2. We find this contention unsound. The petition recites "The petition of Frank Perri," and was signed by his attorney and counsel. But the attached verification was executed by Frank Perri, the respondent, as required by the third paragraph of *N. J. S. A.* 19:29–2. Generally, in view of the public interest in elections, such matters should be determined upon the merits and not upon technical artistry in pleading. We are fortified in this view by noting the broad powers of amendment "in the petition * * * as to form or substance" granted to the trial court by *N. J. S. A.* 19:29–5. See also *In re Smock*, 5 *N. J. Super.* 495, 500 (*Law Div.* 1949). We hold that the petition complied with the statutory provisions.

We now discuss the Haker and Parker votes. Respondent alleges that neither Haker nor Parker "actually resided" in the election district as required by *N. J. S. A.* 19:4–1, and, hence, they were not qualified to vote in the election.

Henry Haker and Stephen Parker are patients at Pine Rest Sanatorium, the Atlantic County Hospital for Tuberculosis Diseases. Haker, a 78-year-old widower, lived at his place of employment in Linwood, New Jersey before being removed to Pine Rest in April 1957 when it was discovered that he was suffering from tuberculosis. His residence in Linwood has since been destroyed to make way for a new school. He testified that Pine Rest is "the only home that I got." Mr. Haker has a daughter whom he visits about once a week. She picks him up and returns him to the hospital.

Parker came to Pine Rest in February 1957 when it was discovered that he, too, had contracted tuberculosis. Prior

to that time he lived in Atlantic City. Parker maintains that he never had a home in his life, but now considers Pine Rest to be his home.

Both patients were registered as voters and as residents of Pine Rest on September 23, 1958. Both voted in the general elections of 1958 and 1959 and in the 1959 primary election. The superintendent of the hospital testified that to her knowledge "neither one of these men has a home anywhere," and that this is the reason why they registered at and have been voting from Pine Rest. She also stated that 21 other patients vote by absentee ballots, but their votes are cast in their home towns.

In democratic societies, such as ours, the right to vote should not be lightly denied. See *Sharrock v. Borough of Keansburg,* 15 *N. J. Super.* 11, 18 (*App. Div.* 1951); *Bliss v. Woolley,* 68 *N. J. L.* 51, 54 (*Sup. Ct.* 1902). The constitutional and statutory provisions as to suffrage should be carried out without the introduction of artificial and technical constructions. However, the right to vote is not a natural and absolute one. Rather, it is a right derived from the states under state constitutions and may be enlarged or restricted, granted or withheld, in the absence of constitutional prohibitions. 18 *Am. Jur., Elections* § 44.

*N. J. S. A.* 19:4–1 provides that a person who possesses the qualifications set forth in our *Constitution, Art.* II, *par.* 3 and who has none of the statutory disqualifications listed in that statute "shall be entitled to vote in the polling place assigned to the election district in which he actually resides * * *." At common law, residence and domicile were not synonymous, the difference between them being one of intention. Thus, for residence there must have been an intention to live in a place for the time being, whereas, for domicile (excluding domicile by operation of law) it was necessary that there be an intention not only to live in the place but also to make a home there. See *State v. Benny,* 20 *N. J.* 238, 251 (1955); 1 *Beale on Conflict of Laws,* § 10.3, *p.* 109. Notwithstanding the

common-law distinction between "residence" and "domicile," this court has held that the residence requirements of voters as set forth in the Constitution and statutes mean that an elector must be domiciled in the State of New Jersey. *State v. Benny, supra*, 20 *N. J.*, at *p.* 252. To acquire a domicile of choice there must be physical presence in the place where domicile is alleged to have been acquired and an intention capable of execution to make that place the home. *State v. Garford Trucking Inc.*, 4 *N. J.* 346, 353 (1950); *Goodrich, Conflict of Laws* § 26 (1949).

Our statutory provisions disclose the nature of the institution in which these patients are being treated. *R. S.* 30:9–45 through 68 refer specifically to county tuberculosis hospitals, their management, duties and powers. *N. J. S. A.* 30:9–54(*f*) provides that the hospital managers "shall have the right to hold and detain any patient * * * when in their judgment it is for the benefit of said patient or for the community that said patient remain there * * *." However, *N. J. S. A.* 30:9–66 provides that a medical superintendent of said county hospital "shall discharge a [tuberculosis] patient whenever cured or whenever further detention would not benefit the patient or the community." As we view these statutory provisions, the legislative plan was to provide a place to cure tuberculosis victims and not to allow them to remain in the hospitals once they were cured or no longer a danger to the community. Thus, the nature of Haker's and Parker's stay is a temporary one.

■■ In order to hold that one "actually resides" in a certain place, he is required to maintain such a relationship with the place or premises so selected as will entitle him at his will to occupy that place or premises whenever his necessities or pleasures require without having to ask the permission of someone else. The matter cannot be controlled solely by intention. *Hall v. Godchaux*, 149 *La.* 733, 90 *So.* 145, 150 (*Sup. Ct.* 1921); *In re Barry*, 164 *N. Y.* 18, 21, 58 *N. E.* 12, 13, 52 *L. R. A.* 831 (*Ct. App.* 1900). Therefore, no matter how *bona fide* a patient's intention

may be, it can never legally effectuate a change of domicile in these particular instances. See *Brueckmann v. Frignoca,* 9 *N. J. Misc.* 128, 129 (*Cir. Ct.* 1931). *N. J. S. A.* 30:9–66 prevents these patients from forming a legally effective intention to reside indefinitely at the sanatorium.

As our determinations of these two issues are dispositive of the appeal, we find it unnecessary to consider any other issue argued before us.

Affirmed without costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.