171 N.J. Super. 356 (1979)
409 A.2d 290
APPLICATION OF NICHOLAS BONSANTO CONTESTING THE NOVEMBER 7, 1978 MUNICIPAL ELECTION IN THE TOWNSHIP OF BORDENTOWN, BURLINGTON COUNTY, NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Submitted November 13, 1979.
Decided December 3, 1979.
*358 Before Judges SEIDMAN, MICHELS and DEVINE.
Eleuteri & Wilkins, attorneys for appellant Nicholas Bonsanto (William T. Wilkins on the brief).
Barbour & Costa, attorneys for respondent Stephen D. Benowitz (John T. Barbour on the brief).
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
This appeal involves a disputed election for the office of councilman in the Township of Bordentown, held on November 7, 1978. Nicholas Bonsanto, an unsuccessful candidate, filed a petition contesting the election. His opponent's motion for summary judgment was granted and Bonsanto appealed.
Of the four candidates for the two vacancies, Bonsanto received the third largest number of votes, but 13 fewer than Stephen D. Benowitz, who placed second. He challenged the *359 legality of 53 votes, out of a total of 338, in the 1st Election District of the municipality, cast by students at the Johnstone Training Center, an institution for blind or otherwise handicapped persons. The allegations were that some of the students, though not handicapped, and thus not entitled to assistance, were accompanied into the voting booth and assisted by election officials; that students were improperly coached by school counselors, and that there were students who were not qualified to vote because their signatures did not match those on the registration forms. In the voting district in which the alleged irregularities occurred, petitioner received more votes than did Benowitz, although the record does not disclose the total for each. Petitioner submitted an affidavit from one of the election officials in which it was alleged that 51 of the 53 students voted for respondent.
In granting Benowitz' motion for summary judgment the trial judge deemed N.J.S.A 19:29-8 to be controlling. That statute provides in pertinent part:
... If misconduct is complained of on the part of the members of any district board it shall not be held sufficient to set aside the election unless the rejection of the vote of such district would change the result as to that office.
The trial judge concluded that even if petitioner were to prove his allegations, the election should not be set aside. He reasoned that since petitioner received more votes than did respondent in the district in question, rejection of the entire district vote would not "change the result."
Among the allowable grounds set forth in N.J.S.A. 19:29-1 for contesting an election are:
a. Malconduct, fraud or corruption on the part of the members of any district board, or of any members of the board of county canvassers, sufficient to challenge the result;
........
e. When illegal votes have been received, or legal votes rejected at the polls sufficient to change the result; .... [Emphasis supplied]
*360 It is evident from a reading of petitioner's brief that the thrust of his complaint is the casting of 53 allegedly illegal votes, attributable at least in part to alleged "malconduct" of members of the district election board. There is no allegation of fraud or corruption, other than an unsupported assertion that "the Democratic member of the board exerted undue influence over the voters in casting their ballots."
Since the matter was resolved by the granting of respondent's motion for summary judgment, the central issue before us on this appeal is whether the pleadings, together with the affidavits submitted on the motion, showed that there was no genuine issue as to any material fact challenged and that the movant was entitled to the judgment as a matter of law. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954).
The trial judge's apparent concept, as indicated, was that no fact issue had to be decided since, assuming the correctness of the irregularities alleged by petitioner and a resultant rejection of the entire vote in the district, the result of the election would not change; consequently petitioner was not entitled to the relief sought as a matter of law. However, the premise upon which the conclusion was based is faulty.
Where irregularities at an election are such that the court cannot with reasonable certainty determine who received a majority of the legal votes, the election should be set aside. In re Hartnett's Petition, 163 N.J. Super. 257, 268 (App.Div. 1978); In re Moffat's Petition, 142 N.J. Super. 217, 226 (App.Div. 1976), certif. den. sub nom. Princeton Tp. v. Bleiman, 71 N.J. 527 (1976); Murphy's Application, 101 N.J. Super. 163, 168 (App.Div. 1968), certif. den. 52 N.J. 172 (1968). See In re Dorgan's Application, 44 N.J. 440 (1965). A corollary proposition is that when, by reason of irregularities in a particular election district, the correct and genuine result cannot be determined with reasonable certainty in that district, the entire result from that district should be rejected. Burkett v. Francesconi, 127 N.J.L. *361 541, 544 (Sup.Ct. 1942). See, also, In re Donahay, 21 N.J. Misc. 159, 161, 32 A.2d 499 (Cir.Ct. 1943). In such case the election is determined on the vote in the balance of the districts. Burkett v. Francesconi, supra 127 N.J.L. at 546-547. This is what the trial judge may have had in mind here.
However, where the result of the improper conduct of members of an election board or of other irregularities "can be ascertained and its effect exscinded, and the true will of the electorate determined, this should be done." See In re Donahay, 21 N.J. Misc. 360, 365, 34 A.2d 299, 301 (Cir.Ct. 1943). Petitioner's position here is that identifiable illegal votes were received sufficient to change the result, N.J.S.A. 19:29-1(e), and he was entitled to his day in court on the issue. He acknowledges his burden not only "of showing that illegal votes were cast in number sufficient to change the result if they had in fact been cast for the contestee, but also the burden of showing, to the extent possible under the circumstances, for whom the illegal votes were cast." Murphy's Application, supra, 101 N.J. Super. at 167.
It must be stressed at this juncture that the improper conduct charged against the election officials in this case, if indeed there was any, did not necessarily invalidate the votes involved. The broad statement is made that the 53 students in question were not physically handicapped and thus not entitled to assistance in the voting booths under N.J.S.A. 19:50-3. But petitioner does not maintain that the allegedly improper assistance induced any of the students to vote for a particular candidate or candidates. In this regard one should also note the statutory requirement that two members of the election board of opposite political faith accompany the disabled voter into the booth. Furthermore, the supporting affidavit submitted by petitioner clearly indicates that each assisted voter was simply told the candidates' names and asked which one the voter wanted. That most of the students allegedly voted for the Democratic candidate, if they did, clearly was not the result of *362 any misconduct by an election official. It is not asserted that any of the students would otherwise have cast his vote for the candidate of the other party. See In re Clee, 119 N.J.L. 310, 328 (Sup.Ct. 1938). If the local election officials failed to observe in any way the statutory procedure for assistance to disabled voters, such delinquency would not be a ground for invalidating those votes. Ibid.
As for the allegation that students were improperly coached by someone from the center, there is nothing in the record to support the charge. The affidavit referred to above states only that the "coach was standing outside the curtain and had to be told several times not to do that." Even if true, the naked assertion would be insufficient to constitute a challenge to the election. Cf. In re Clee, supra at 329.
Although petitioner sought to argue below, and attempts to do so also on appeal, that the students lacked the mental capacity to vote, no mention of such infirmity appears in the petition and nothing in the record suggests the existence of a genuine issue of fact with respect thereto. Furthermore, since all the students were duly registered, the issue of whether they possessed the requisite mental competency to vote is not germane to this appeal. The responsibility to assure that only properly qualified persons are registered to vote is vested in the county board of elections. Cf. Carroll v. Cobb, 139 N.J. Super. 439, 448-449 (App.Div. 1976). And see N.J.S.A. 30:4-24.2(a).
All that remains is petitioner's further allegation that "certain students from the Johnstone Center were not properly qualified to vote in that their signatures at the time of voting did not match the signatures on the registration forms." In view of the basis for the trial judge's determination of the matter, this issue was not addressed below. We assume that since there is appended to the petition a verification in which petitioner states under oath that "the facts contained therein are true to the best of my knowledge and information," he is prepared to offer evidence to support the allegation, to identify *363 those students who cast illegal votes and to prove that these votes, if exscinded, would have changed the result. In the circumstances, bearing in mind that a summary judgment is to be granted with great caution, that all doubts are to be resolved against the movant and that "a litigant has the right to trial where there is the slightest doubt as to the facts," Ruvolo v. American Cas. Co., 39 N.J. 490, 499 (1963), we conclude that the summary judgment should be reversed and the matter remanded for a hearing on this issue alone.
Reversed and remanded for further proceedings consistent with and limited to the foregoing. Jurisdiction is not retained.