736 A.2d 546 (1999)
324 N.J. Super. 548
Robert KIRK and Eileen Phoebus, Petitioners,
v.
Claire FRENCH, Monmouth County Clerk; John Bradshaw, Superintendent of Elections; Richard F. Ulbrich, Candidate; Spring Lake Board of Education; and Monmouth County Board of Elections, Respondents.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided July 6, 1998.
*547 Cornelius W. Daniel, III, Pt. Pleasant, for Petitioners (Cornelius W. Daniel, III).
Kenneth C. Green, DAG, for Monmouth County Board of Elections, Monmouth County Clerk, Monmouth County Board of Elections, Superintendent of Elections (Attorney General of New Jersey).
Kenneth B. Fitzsimmons, Pt. Pleasant Beach, for Spring Lake Board of Education (Sinn, Fitzsimmons, Cantoli, West & Pardes).
Jay R. Schmerler, Belmar, for Richard F. Ulbrich (Jay R. Schmerler).
LEHRER, J.S.C.

FACTS
On April 21, 1998, the Borough of Spring Lake conducted a Board of Education election from 5:00 p.m. to 9:00 p.m. The declared winners were incumbents Frances Florentine and Richard F. Ulbrich. Mr. Ulbrich defeated the third candidate, petitioner Robert Kirk, by one vote.
Eileen Phoebus, a long time Spring Lake resident and a regular voter, was not permitted to cast her vote. It is undisputed that the Monmouth County Superintendent of Elections and Commissioner of Registration inadvertently removed Eileen Phoebus' registry page from the voting book. The registry page of Kimberly Eileen Phoebus, her daughter, should have been removed as she had moved out of the state.
After being advised at the polls that she was unable to vote, Mrs. Phoebus waited at the polling place for approximately 25 minutes to try and resolve the problem. Mrs. Phoebus testified that she was eventually told by a poll worker to "call" borough hall to resolve the matter. There was testimony that Mrs. Phoebus was instructed to "go to borough hall."
The court finds Mrs. Phoebus to be an extremely credible witness and a sincerely motivated citizen. The court finds Mrs. Phoebus was told or believed she was told to "call" borough hall.
Thereafter, Mrs. Phoebus went home and attempted to call borough hall as instructed, between 4-6 times. Each time she received the following recorded message:
*548 You have reached the Borough of Spring Lake municipal offices. Our offices are now closed for the day. Our office hours are 8:00 a.m. to 4:00 p.m., Monday thru Friday. If you would like to leave a message for someone and you know their extension number, you may enter it now or please call back during our regular hours. Thank you. (A long pause) Good bye.
The calls were made between 6:00 p.m. and 7:00 p.m. After failing to reach the borough hall by telephone, Mrs. Phoebus drove past the borough hall at approximately 7:30. She testified that the office appeared to be closed as no lights were on and no cars were parked in front of the building. Mrs. Phoebus did not attempt to gain access to the building by trying the door nor did she look in the rear parking lot where employees park.[1] Upon her return home, Mrs. Phoebus attempted to call the county government to secure her right to vote. She testified she looked in the government section of the telephone book under "voting" but could only find a number for the voting machine warehouse which she did not call.[2]

THE ELECTION CONTEST
The right of Mr. Kirk to contest the election and the procedure thereof are strictly a matter of legislative determination, which must be followed. In re Petition of Clee, 119 N.J.L. 310, 196 A. 476 (Sup.Ct.1938). This statutory scheme is fully set forth in Chapter 29 of Title 19 of the New Jersey Statutes. N.J.S.A. 19:29-1 sets forth the exclusive, specific statutory grounds upon which an election contest must be based. N.J.S.A. 19:29-1(e) provides for an election contest when:
"*** illegal votes have been received, or legal votes rejected at the polls sufficient to change the result."
The fundamental purpose of an election contest is to ascertain the true will of the electorate. Wene v. Meyner, 13 N.J. 185, 196, 98 A.2d 573 (1953). The burden of proof lies upon the contestant to show that such will was thwarted upon one or several of the statutory grounds. See In re Application of Moffat, 142 N.J.Super. 217, 361 A.2d 74 (App.Div.1976).
In order to prevail on a claim of "rejected votes," petitioner must present proofs by a preponderance of the credible evidence that otherwise qualified voters were denied the right to vote. Magura v. Smith, 131 N.J.Super. 395, 330 A.2d 52 (Law Div.1974); In re Election of Maplewood, 255 N.J.Super. 690, 605 A.2d 1164 (Law Div.1992). It is not necessary to show for whom the voters would have voted if they were permitted to do so. What is critical to the claim is that the number of legal votes rejected would be sufficient to change the result. In re Application of Moffat, supra, N.J.S.A. 19:29-1(e). This showing can be made by demonstrating that had the wrongfully rejected votes been cast for Mr. Kirk, the result would have been different. If the number of rejected voters would not change the result, the challenge to the election must fail on that ground.

THE VOTE OF EILEEN PHOEBUS
Mr. Kirk lost the seat on the Spring Lake Board of Education to Mr. Ulbrich by one vote. Mr. Kirk asserts that Eileen Phoebus was a "legal voter rejected" voter. It is undisputed that the Office of Monmouth County Superintendent of Elections and Commissioner of Registration mistakenly removed Mrs. Phoebus' registry page from the book when it had intended to remove the page of her daughter, Kimberly Eileen Phoebus, who had moved to Virginia. In order to *549 determine whether Mrs. Phoebus is a legal voter rejected, the plaintiff must prove more than the mistake made.
In, In re Petition of Hartnett, 163 N.J.Super. 257, 394 A.2d 871 (App.Div.1978), Elizabeth Kaiser went to the polling place to cast her vote. The district board worker determined her registry page was missing from the book and told Ms. Kaiser she would have to go to the Municipal Clerk's office for assistance. Ms. Kaiser refused to go and, therefore, did not vote. The trial court held Ms. Kaiser was illegally rejected primarily on the basis of the decision In re Application of Moffat, supra, in which an election result was overturned because a malfunctioning machine prevented a significant number of voters from voting.
The Appellate Division overturned the trial court's ruling in Hartnett. In so doing, it distinguished Moffat by stating at pages 268-269, 394 A.2d 871:
In our view, the factual situation relating to Mrs. Kaiser is distinguishable from that in Moffat and should not serve to overturn the election ***. When dealing with the malfunction of a machine which affects the will of a substantial number of voters, the election takes on the aura of uncertainty and unfairness calling for judicial intervention. And if the evidence supports a finding that sufficient numbers were prevented from voting for reasons beyond their control so as to create the potential of a different result, the election should be set aside.
This is far different from a human error in the registration book which simply incommodes one registrant. Mrs. Kaiser was not prevented from voting. She could have voted through the simple expedient of executing an affidavit at borough hall where the original records are kept. Her intransigence in refusing to comply with reasonable and normal requirements designed to assure honest voting should not result in the extreme relief of voiding an election. As we view this voter's position, she can be equated with a voter who must wait in line to vote and who gives up his suffrage right because of impatience or inconvenience. Manifestly, such a complaint of a disappointed voter could not serve as a ground for setting aside an election on the basis that a legal vote was rejected. Similarly, Mrs. Kaiser's personal preference to give up her vote rather than complying with the necessary procedure does not fall into the category of "legal votes rejected" contemplated by the Legislature. Her vote was not rejected. It was delayed for further verification. Her failure to vote was the result of her own voluntary decision.
In order to determine whether a legal vote has been rejected, this court must subjectively evaluate the circumstances of Mrs. Phoebus to determine whether she refused to comply with a simple, reasonable and normal requirement designed to assure honest voting.
This decision must be made by viewing the circumstances particular to Mrs. Phoebus (the individual voter) and not the reasonable voter in general. Any other standard has the potential of disenfranchising voters based upon differences contrary to the letter and spirit of the law, including but not limited to:
educational or communication differences (good faith effort but inability to understand and follow instructions); family responsibilities (single parent who in good faith attempts to follow instructions but can't because of child care responsibilities);
employment exigencies (voting machine broken; uncertainty as to repair time; waiting voters would miss only public transportation to work);
economics (inability to procure transportation to an alternate site to cure problem);
physical challenges particular to a voter.
The subjective evaluation of Mrs. Phoebus' conduct clearly indicates she reasonably *550 attempted to comply with the simple, reasonable and normal instructions of the poll workers in light of her particular circumstances. The court accepts Mrs. Phoebus' highly credible testimony that she believed the poll workers instructed her to "call Borough Hall." Mrs. Phoebus did what she was instructed to do. She called 4-6 times and received a recorded message indicating the Borough Hall was closed and to call back during regular business hours, 8:00 a.m. to 4:00 p.m.
In addition, Mrs. Phoebus looked for a solution in the Monmouth County telephone directory. The only number she could find was for the Monmouth County voting machine warehouse. Mrs. Phoebus reasonably believed dialing that number could not solve her problem, so she did not. Finally, Mrs. Phoebus drove past the Borough Hall. The court accepts as credible her testimony that she saw no lights on and no cars parked in front. She made a reasonable assumption that no one was there in light of the 4 to 6 phone calls which advised the Borough Hall was closed. Mrs. Phoebus did all that could be expected of a reasonable voter in her circumstances.
Clearly, Mrs. Phoebus is a "legal voter rejected" pursuant to N.J.S.A. 19:29-1(e). Her legal vote rejected has the potential to change the results.

THE REMEDY
In count two of the petitioners' complaint, Mrs. Phoebus seeks the right to vote nunc pro tunc. She asks the court to permit her to cast a ballot now and have it count in the April 21, 1998 election.
The court is vested with both statutory and inherent powers to remedy any action taken which is illegal or inequitable in order to carry out the will and mandate of the people. In an election contest, if it is shown that there were legal votes rejected at the polls sufficient to change the result, the statutory remedy is for the election to be set aside. N.J.S.A. 19:29-9 provides:
If the judgment be against the incumbent, and he has already received a certificate of election, the judgment shall annul it. If the judge finds that no person was duly elected, the judgment shall be that the election be set aside.
In re 1984 Maple Shade General Election, 203 N.J.Super. 563, 589, 497 A.2d 577 (Law Div.1985); Application of Bonsanto, 171 N.J.Super. 356, 409 A.2d 290 (App.Div.1979); In re Petition of Hartnett, supra at 268, 394 A.2d 871; Application of Moffat, supra at 226, 361 A.2d 74; In re Election of Maplewood, supra. N.J.S.A. 19:29-1 et seq.
The state legislature has not included the right to vote nunc pro tunc, as a remedy for a wrongfully rejected voter. Providing that ability to a voter such as Mrs. Phoebus has the potential to violate the secrecy of her vote and in other contexts provide the potential for fraud. No matter how Mrs. Phoebus casts her vote, the result of the election would make her choice apparent to all.
No right is more precious in democracy than the right to vote which is fundamental as it preserves all other rights. Vargas v. Calabrese, 634 F.Supp. 910 (D.N.J.1986). Essential to the democratic process is the right to vote in private and in secret.
No existing statutory or case authority supports the proposition that the right to secrecy of the ballot may be jeopardized, and the integrity of the electoral process compromised, for cost savings. See Barrett v. Monmouth County, 307 N.J.Super. 403, 415-416, 704 A.2d 1053 (Law Div.1997); In re Battle Petition, 190 N.J.Super. 232, 236, 462 A.2d 1291 (App.Div.1983), aff'd as modified by, 96 N.J. 63, 473 A.2d 980; Application of Langbaum, 201 N.J.Super. 484, 490, 493 A.2d 580 (App.Div.1985); In re Petition of Byron, 165 N.J.Super. 468, 474, 398 A.2d 599 (Law Div.1978), aff'd 170 N.J.Super. 410, 406 A.2d 982 (App.Div.), certif. denied, 82 N.J. 280, 412 A.2d 786 (1979); Matter of Mallon, 232 N.J.Super. 249, 556 A.2d 1271 (App.Div.1989); Petition of Kriso, 276 *551 N.J.Super. 337, 647 A.2d 1373 (App.Div.1994).
The election laws have been created to deter fraud, safeguard the secrecy of the ballot and to preserve the enfranchisement of qualified voters. In re Matter of Petition of Byron, 165 N.J.Super. 468, 474, 398 A.2d 599 (Law Div.1978). The community-minded good faith request of Mrs. Phoebus to be permitted to vote nunc pro tunc, in order to save the Borough of Spring Lake the cost of the new election must be denied.

NEW ELECTION
The April 21, 1998 election for the Borough of Spring Lake Board of Education is set aside as a legal voter was rejected sufficient to effect the outcome of the election. A new election shall take place between Richard F. Ulbrich and Robert Kirk.
NOTES
[1] It appears from the testimony, had Mrs. Phoebus entered the Borough Hall, the office of the Borough Clerk was staffed and the problem would have been resolved.
[2] It appears from the testimony, had Mrs. Phoebus called the voting machine warehouse number, she would have reached the County Board of Elections and the matter would have been resolved.