909 A.2d 1199

IN RE THE CONTEST OF THE NOVEMBER 8, 2005 GENERAL
ELECTION FOR THE OFFICE OF MAYOR FOR THE
TOWNSHIP PARSIPPANY–TROY HILLS.

Superior Court of New Jersey
Appellate Division

Submitted September 13, 2006—Decided November 21, 2006.

664

Before Judges CUFF, WINKELSTEIN and MESSANO.

*Carbone and Faasse,* attorneys for appellant, *Rosemarie C. Agostini (John M. Carbone,* on the brief).

*Genova, Burns & Vernoia,* attorneys for respondent Mayor *Michael Luther (Angelo J. Genova,* of counsel; *Peter J. Cammarano, III, and Michael J. Grohs,* on the brief).

*Ronald Kevitz, Morris County Counsel,* attorney for respondent Clerk of Morris County *Joan Bramhall (Daniel W. O'Mullan,* Special County Counsel, on the statement in lieu of brief).

The opinion of the court was delivered by

MESSANO, J.S.C. (temporarily assigned).

Petitioner, Rosemarie C. Agostini (Agostini), placed second in the November 8, 2005 general election for the office of mayor of the Township of Parsippany–Troy Hills (Parsippany). She challenged the result in a verified petition filed pursuant to *N.J.S.A.* 19:29–1. The winner of the election, respondent Michael Luther (Luther), successfully moved to dismiss the petition for failing to state a claim pursuant to *Rule* 4:6–2(e). Agostini now appeals that dismissal. We reverse and remand the matter for an expedited

plenary hearing and further proceedings consistent with this opinion.

Although the motion brought by Luther sought both dismissal under *Rule* 4:6–2(e), and summary judgment under *Rule* 4:46–1, the motion judge determined only that the petition failed to state a claim. We now consider whether that dismissal was appropriate under the legal standards governing a motion to dismiss pursuant to *Rule* 4:6–2(e).

In our review, we apply the same standard as the trial court. *Sickles v. Cabot Corp.,* 379 *N.J.Super.* 100, 106, 877 *A.*2d 267 (App.Div.), *certif. denied,* 185 *N.J.* 297, 884 *A.*2d 1267 (2005). A motion to dismiss under *Rule* 4:6–2(e) should be "approach[ed] with great caution" and should only be granted in "the rarest of instances." *Printing Mart–Morristown v. Sharp Elec. Corp.,* 116 *N.J.* 739, 771–72, 563 *A.*2d 31 (1989). We must view the allegations in the complaint with liberality and without concern for the plaintiff's ability to prove the facts alleged in the complaint. *Id.* at 746, 563 *A.*2d 31. "A motion to dismiss a complaint under *Rule* 4:6–2(e) for failure to state a claim upon which relief can be granted must be evaluated in light of the legal sufficiency of the facts alleged in the complaint." *Donato v. Moldow,* 374 *N.J.Super.* 475, 482, 865 *A.*2d 711 (App.Div.2005). The plaintiff's obligation on a motion to dismiss is "not to prove the case but only to make allegations, which, if proven, would constitute a valid cause of action." *Leon v. Rite Aid Corp.,* 340 *N.J.Super.* 462, 472, 774 *A.*2d 674 (App.Div.2001). Thus, considering and accepting as true the facts alleged in the complaint, we determine whether they set forth a claim upon which relief can be granted. *Donato, supra,* 374 *N.J.Super.* at 483, 865 *A.*2d 711.

After counting all votes cast from voting machines, absentee ballots, and provisional ballots, the results of the November 8, 2005 election for mayor of Parsippany yielded the following results:

| | |
|---|---|
| Luther | 7110 |
| Agostini | 7069 |
| Messmer | 320 |
| Spector | 199 |

A recount and recheck of the voting machines was ordered and the results changed little. On November 22, the County Clerk certified the results as follows:

| | |
|---|---|
| Luther | 7110 |
| Agostini | 7070 |
| Messmer | (Unknown) |
| Spector | (Unknown) [1] |

On December 8, petitioner filed her verified petition pursuant to *N.J.S.A.* 19:29–1. She alleged: illegal votes were received and legal votes were rejected in violation of *N.J.S.A.* 19:29–1e; errors occurred in the counting of the votes in violation of *N.J.S.A.* 19:29–1f; and other causes that led to the wrong result in the election in violation of *N.J.S.A.* 19:29–1g. She attached to her complaint exhibits that listed by name and address voters who allegedly cast their vote illegally, or were denied the right to vote. She also included exhibits that allegedly demonstrated discrepancies in the number of absentee ballots counted and in the count of voters at various polling places.

On December 13, the trial judge held a telephone conference with counsel for petitioner and respondent, and the Deputy Attorney General representing the Morris County Board of Elections. No verbatim record of the telephonic conference exists. However, as a result of the conference, the judge entered a scheduling order that set dates for discovery, the filing of dispositive motions, and trial. In addition, the order required petitioner to file an amended petition no later than December 19, 2005, and required, "The amendment shall set forth the facts, circumstances and statutory basis regarding the deficiencies as alleged in the Petition, as amended and attached exhibits."

---

[1] Although the court ordered a complete recount of all ballots, the Clerk failed to recount the ballots for Messmer and Spector.

On December 20, petitioner filed her amended pleading. It was not verified; but, the complaint once again had exhibits attached. One included the names, addresses, and election districts of nine of a total of ten voters that petitioner alleged had their legal votes rejected. Another included the names, addresses and election districts of forty-one voters petitioner alleged voted illegally. A third exhibit included a list of election districts where the totals of voters on the voting machine counter varied from the number of written voting slips issued by voting officials at those polling places; these discrepancies totaled four votes. Lastly, she attached an exhibit of the names, addresses and election districts of seventy-four absentee ballots that she alleged were improperly received.

The list of alleged illegal voters, and the list of absentee voters, cross-referenced a coded key in which the specific statutory violation alleged for each voter or ballot was enumerated. With the exception of the coded key, and changes to the totals of voters contained in the attached exhibits, the amended pleading was identical to the original complaint. Among the various forms of relief sought, Agostini asked the court to "Declare ... the Petitioner duly elected, set aside that part of the election, nullify the results, if permitted, order a new election or declare the office vacant." She further requested, "In the event that Michael M. Luther is sworn into office, remove him from office and enter an order declaring the office vacant."

Respondent moved to dismiss petitioner's amended complaint. At the hearing on January 4, 2006 petitioner withdrew her allegations sounding in fraud or malconduct. *See N.J.S.A.* 19:29–1a. The administrator of the Board of Elections revealed that her office had found an additional fifteen absentee ballots after the recount. The court ordered the counting of these additional ballots, resulting in the final totals being

| | |
|---|---|
| Luther | 7111 |
| Agostini | 7072 |

The administrator also noted that although 507 certificates for absentee ballots were issued, only 506 absentee ballots were

counted. The motion judge then considered and granted respondent's motion to dismiss the petition.

In an oral opinion issued that day, and in a subsequent written opinion issued January 19, the motion judge explained his rationale. Relying primarily upon *Lehlbach v. Haynes*, 54 *N.J.L.* 77, 23 *A.* 422 (Sup.Ct.1891), and *Application of James T. Murphy*, 101 *N.J.Super.* 163, 243 *A.*2d 832 (App.Div.), *certif. denied*, 52 *N.J.* 172, 244 *A.*2d 302 (1968), he concluded,

> [S]ome specificity is required in a petition more so than traditional civil action complaints and at the very least where illegal votes are the principal issue, some facts showing due diligence that at a minimum such votes were cast for the incumbent and/or legal votes for the petitioner were rejected so that the results of the election may change … [T]he petition must show before (the) hearing … that there is at least some likelihood of a change in the election result because illegal votes were cast for Mr. Luther and/or legal votes for Mrs. Agostini were not counted.

He dismissed the petition because it failed to demonstrate minimum compliance with "the statutory requirement" that illegal votes were counted or legal votes denied in a number "sufficient to change the result" of the election. *N.J.S.A.* 19:29–1e.

We begin our review of the motion judge's decision by examining the statutory scheme governing election contests, *N.J.S.A.* 19:29–1 to–14, fully recognizing that "our state election laws are designed to deter fraud, safeguard the secrecy of the ballot, and prevent disenfranchisement of qualified voters." *In Re Gray–Sadler*, 164 *N.J.* 468, 474–75, 753 *A.*2d 1101 (2000). To further those goals, election laws are to be construed liberally. *Ibid.* "They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons." *Kilmurray v. Gilfert*, 10 *N.J.* 435, 440, 91 *A.*2d 865 (1952). The fundamental purpose of an election contest is "to ascertain the true will of the electorate." *Kirk v. French*, 324 *N.J.Super.* 548, 552, 736 *A.*2d 546 (Law Div.1998) (*citing Wene v. Meyner*, 13 *N.J.* 185, 196, 98 *A.*2d 573 (1953)). We have previously noted the importance of election contest litigation.

> Finally, we are concerned about imposing undue constraints on election-contest litigation. This is important litigation going to the heart of the democratic process

upon which all our institutions depend. We recognize that such litigation is as subject to abuse as any other. But we are also convinced that because of the substantive nature of the issues involved in election contests and the time pressures involved in seeking judicial redress, the courts should be more, not less, indulgent in appraising the motives and well-groundedness of the litigants' legal positions.

[*Iannone v. McHale,* 245 *N.J.Super.* 17, 32, 583 *A.*2d 770 (App.Div.1990).]

*N.J.S.A.* 19:29–1 sets forth the grounds for an election contest. The only section implicated by the motion judge's decision provides:

The nomination or election of any person to any public office or party position, or the approval or disapproval of any public proposition, may be contested by the voters of this State or of any of its political subdivisions affected thereby upon 1 or more of the following grounds:

. . . .

e. When illegal votes have been received, or legal votes rejected at the polls sufficient to change the result.

[*N.J.S.A.* 19:29–1e.]

*N.J.S.A.* 19:29–2 sets forth the procedure for the commencement of the election contest.

[T]he contest shall be heard and determined by a judge of the Superior Court assigned to the county wherein such office … is to be contested, and shall be commenced by the filing of a petition … signed … by any defeated candidate for such … public office.

The petition shall be verified by … the candidate filing the same … *When the reception of illegal or the rejection of legal voters is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected, with the election district where they voted, or offered to vote, shall be set forth in the petition, if known.*

(Emphasis supplied)

The petition must be filed within thirty days of the election or within thirty days of discovery of a cause of action based upon "statements, deposit slips or vouchers" filed under Title 19. *N.J.S.A.* 19:29–3. The court must then set a trial date not less than fifteen, and not more than thirty days after the petition is filed. *N.J.S.A.* 19:29–4. The petition must be served upon the incumbent no later than ten days before the trial date. *Ibid.*

The trial court sets the procedures for the contest; the procedures shall be "similar to those in a civil action so far as practicable." *N.J.S.A.* 19:29–5. The court has the power to compel the

attendance of witnesses and the production of evidence at the hearing. *N.J.S.A.* 19:29–6. Notably, with respect to the production of witnesses who voted in the election, the statute provides

> The judge may require any person called as a witness who voted at such election to answer touching his qualification as a voter, and if the court, from his examination, or otherwise, is satisfied that he was not a qualified voter in the election district where he voted, he may compel him to disclose for whom he voted.
>
> [*N.J.S.A.* 19:29–7.]

*See also N.J.R.E.* 513 ("Every person has a privilege to refuse to disclose the tenor of his vote at a political election unless the judge finds that the vote was cast illegally.").

The court shall decide "whether the incumbent or any contestant was duly elected, and the person so declared elected will be entitled to his certificate." *N.J.S.A.* 19:29–8. The statute further provides:

> If the judgment be against the incumbent, and he has already received a certificate of election, the judgment shall annul it. If the judge finds that no person was duly elected, the judgment shall be that the election be set aside.
>
> [*N.J.S.A.* 19:29–9.]

Appeal of the court's judgment in an election contest is to the Appellate Division. *N.J.S.A.* 19:29–11.

We next turn to the cases cited by the motion judge in dismissing the petition. In *Lehlbach, supra,* the court considered whether the petition in an election contest for the office of mayor of Newark sufficiently stated a cause of action. A total of one hundred and ninety six votes separated the winner, Haynes, and the challenger, Lehlbach. 54 *N.J.L.* at 79, 23 *A.* 422. At the time, the statutory grounds for the contest included identical language to that now contained in *N.J.S.A.* 19:29–1e. *Id.* at 78, 23 *A.* 422. The petition alleged that various votes were wrongfully rejected by election officials and that some voters cast their votes in districts where they did not reside. *Id.* at 79–80, 23 *A.* 422. These allegations were deemed insufficient because,

> The names of these persons and the districts in which they voted are given. But there is nothing to indicate for whom they voted. Without this, the court cannot say that these illegal votes were "sufficient to change the result."
>
> [*Ibid.*]

Concluding the petition failed to set forth adequate grounds under the statute, the court summarized:

> The contestant urges that, without judicial process, it is impossible for him to obtain evidence as to the candidate for whom these illegal votes were cast, and, therefore, insists that the statute only requires him to show illegal votes in number sufficient to change the result, if all be deducted from the incumbent's tally. We do not, however, so read the act. It makes the reception of illegal votes a ground of contest only when they are sufficient to change the result—that is, not merely to show that the plurality declared for the incumbent is erroneous, but to show that another than he was the person legally elected. Unless the petition states circumstances which prima facie render this conclusion probable, it does not present a case within the law.

[*Id.* at 81, 23 *A.* 422.]

In *In Re Clee*, 119 *N.J.L.* 310, 196 *A.* 476 (Sup.Ct.1938), the court considered the sufficiency of the challenger's petition in an election contest for the office of Governor. Among other allegations, the petitioner contended that examination of poll books and voter registration books revealed obvious forgeries. *Id.* at 324, 196 *A.* 476. He further contended that some 55,000 illegal votes were cast for the incumbent. *Ibid.* The court noted that the statute required the petition to set forth the names and election districts of voters, if known, when the reception of illegal, or the rejection of legal, voters was alleged. *Ibid.*[2] Citing to the earlier case of *Burrough v. Branning*, 9 *N.J.L.J.* 110 (Cir.Ct.1886), the *Clee* court noted,

> In that case, which has been followed ever since, the court clearly indicated that it is the duty of a contestant, alleging the reception of illegal votes, or the rejection of legal votes, to make some effort at identification by way of description or otherwise and to indicate in what districts such illegal votes were accepted or legal votes rejected.
>
> In the charge before us we have only the bare statement that fifty-five thousand votes were illegally received. No effort is made to identify a single one of such voters out of the eight municipalities in which more than two hundred thousand votes were cast.

[119 *N.J.L.* at 325, 196 *A.* 476.]

---

[2] The language is identical to the language now contained in *N.J.S.A.* 19:29-2.

Since the petitioner had not included a single name or district of any of the alleged illegal voters, the petition failed to state a cause of action. *Id.* at 326, 196 *A.* 476.

The court provided the reasons for the scrupulous review applied to the pleadings in election contests.

> We must not lose sight of the fact that it is the duty of the court to see to it that the petitioner states a cause of action under the law before setting in motion the machinery for trying the contest. *All of the cases recognize that the pleading must be sufficient at least to enable the incumbent to prepare his defense to the charges set forth.* In the case of *Lippincott v. Felton,* Chief Justice Magie ... said, "The purpose" (of the petition) "was not only to apprise the incumbent of the grounds of the contest but to enable him to prepare and meet the specific charges by evidence." Manifestly, *the present ... petition is so indefinite and vague that it would be impossible to prepare a defense to it.*
>
> [*Ibid.* (quoting *Lippincott v. Felton,* 61 *N.J.L.* 291, 295, 39 *A.* 646 (Sup.Ct.1898)) (emphasis supplied).]

The motion judge also relied upon the holdings in *Murphy, supra,* 101 *N.J.Super.* 163, 243 *A.*2d 832, and *In Re Application of Mallon,* 232 *N.J.Super.* 249, 556 *A.*2d 1271 (App.Div.), *certif. denied,* 117 *N.J.* 166, 564 *A.*2d 883 (1989). *Murphy* involved a contested election for mayor and council offices in Englewood. *Murphy, supra,* 101 *N.J.Super.* at 165–66, 243 *A.*2d 832. After a lengthy trial, the court decided it could not determine for whom illegal ballots were cast. But, since the number of illegal ballots cast was sufficient to change the outcome of the election if all were deducted from the winning candidate's total, the election results for one of the council seats was annulled. *Id.* at 166, 243 *A.*2d 832. In reversing the trial court's decision, we defined the burden to be borne by a successful challenger under *N.J.S.A.* 19:29–1e.

> When, as here, an election is contested on the sole ground that "illegal votes have been received ... at the polls sufficient to change the result," *N.J.S.A.* 19:29–1e, the contestant has not only the burden of showing that illegal votes were cast in number sufficient to change the result if they had in fact been cast for the contestee, but also the burden of showing, to the extent possible under the circumstances, for whom the illegal votes were cast.
>
> [*Id.* at 167, 243 *A.*2d 832.]

Since the challenger could not prove "for whom the illegal votes were cast," he could not prove their number was "sufficient to change the result." *N.J.S.A.* 19:29–1e.

In *Mallon,* we reversed the trial court's annulment of a municipal council election. *Mallon, supra,* 232 *N.J.Super.* at 253, 556 *A.*2d 1271. We reaffirmed our holding in *Murphy* and noted that in the face of inaction, we presumed that the Legislature acquiesced in our interpretation of the statute. *Id.* at 268, 556 *A.*2d 1271. We also recognized an exception to the general rule that the challenger must demonstrate for whom the illegal voter voted.

> While the burden of proof is on the contestant in a [*N.J.S.A.* 19:29–1e] contest to establish not only the illegality of a vote, but in addition how the voter voted, an exception has developed in the case law where the challenger cannot establish to the extent possible under the circumstances for whom the illegal vote was cast. We interpret this to mean that it must be shown that it is not possible to locate the person who cast the illegal vote or, if located, to compel the voter under [*N.J.R.E.* 513] to disclose how he or she cast the illegal vote. For that exception to apply, however, the challenger must show the exercise of reasonable diligence in attempting to find the challenged voter and that, despite such diligence, he or she could not be found. The exception cannot mean merely that it is impossible to determine how the person voted or the language of the statute requiring that it be "sufficient to change the result" (*N.J.S.A.* 19:29–1e) would have no meaning. The challenger has to carry both prongs of the burden established in *Murphy* and its progeny and, in addition, prove that despite diligent effort the illegal voter could not be found or refused to disclose his vote.
>
> [*Id.* at 269, 556 *A.*2d 1271 (citing *In Re Bonsanto's Application,* 171 *N.J.Super.* 356, 360, 409 *A.*2d 290 (App.Div.1979)).]

Against the statutory scheme and this precedent, we now consider the dismissal of petitioner's pleading. We note that both *Murphy, supra,* and *Mallon, supra,* were decided after the benefit of a full and complete trial on the merits of the petition. Indeed, most reported decisions interpreting the statute involve factual complexes wherein a trial actually took place and the sufficiency of the evidence was at issue. *In Re Bonsanto's Application,* 171 *N.J.Super.* 356, 409 *A.*2d 290 (App.Div.1979); *In Re Petition of Hartnett,* 163 *N.J.Super.* 257, 394 *A.*2d 871 (App.Div.1978); *In Re Application of Moffat,* 142 *N.J.Super.* 217, 361 *A.*2d 74 (App.Div.), *certif. denied sub. nom. Princeton v. Bleiman,* 71 *N.J.* 527, 366 *A.*2d 682 (1976); *Kirk, supra,* 324 *N.J.Super.* 548, 736 *A.*2d 546. As such, their enunciation of the standard of proof required to prevail in an election contest under *N.J.S.A.* 19:29–1e is not the same standard we apply to considering the sufficiency of a plead-

ing where the petitioner's burden is simply to allege sufficient facts which, if proven, would entitle petitioner to prevail. *Leon, supra,* 340 *N.J.Super.* at 472, 774 *A.*2d 674.

We also note the factual differences between the petition in *Clee, supra,* 119 *N.J.L.* 310, 196 *A.* 476, and the petition in this case. There, the petition failed to contain the name of a single individual that voted illegally or who was denied the chance to vote. *Id.* at 325, 196 *A.* 476. Here, petitioner identified by name, address, and district forty-one voters she alleged voted illegally, nine voters whose votes were allegedly wrongfully rejected, and seventy-four absentee ballots received in alleged violation of various provisions of law.

Only when "the reception of illegal or the rejection of legal voters is alleged as a cause of contest" does the statute require such specificity in the pleading, and, then, only if the information is known to the petitioner. *N.J.S.A.* 19:29–2. None of the other eight statutory causes of action delineated in *N.J.S.A.* 19:29–1 requires such specificity in the petition. In our view, plaintiff fully complied with the specificity required by *N.J.S.A.* 19:29–2.

In dismissing the complaint, the motion judge, citing specifically to *Lehlbach, supra,* concluded the petition failed to demonstrate "that there is at least some likelihood of a change in the election result because illegal votes were cast for Mr. Luther and/or legal votes for Mrs. Agostini were not counted." However, in the 115 years since *Lehlbach* was decided, the standard for judging sufficiency of the pleadings, as well as the standard of proof in election contests, has evolved.

▇ Our modern rules of pleading have long ago eliminated technical requirements that existed when *Lehlbach* was decided. *Rule* 4:5–2 only requires that the pleading "contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader claims entitlement." "It is fundamental that the pleading must fairly apprise the adverse party of the claims

and issues raised." Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 4:5–2 (2007). The Supreme Court has noted, "The objective of the present practice is to reach an issue through the media of simplified pleadings, but not at the sacrifice of stating the elements of a claim ... It must not be forgotten that the aim of the rules is substantial justice, and that 'All pleadings shall be so construed as to do substantial justice.' " *Melone v. Jersey Cent. Power & Light Co.,* 18 *N.J.* 163, 174, 113 *A.*2d 13 (1955) (quoting *C.B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co.,* 14 *N.J.* 146, 155–56, 101 *A.*2d 544 (1953)). "Read together, the rules on pleadings reflect our overall goal of accomplishing 'substantial justice on the merits' by not closing the courtroom doors to a party whose only failure is a procedural or technical mistake that causes no prejudice to other litigants." *Ferreira v. Rancocas Orthopedic Assocs.,* 178 *N.J.* 144, 166 n. 3, 836 *A.*2d 779 (2003) (quoting *Melone, supra,* 18 *N.J.* at 174, 113 *A.*2d 13).

■ Here, the complaint adequately stated the factual basis for Agostini's claims, as well as the relief she requested. While she did not specifically claim that the results of the election would be different based upon the illegal votes received and the legal votes rejected, that was implicit in her request that the court declare her the winner of the election and, if necessary, remove Luther from the office of Mayor.[3]

■ Most importantly, the complaint adequately apprised Luther of the claims being made with detailed specificity so that he was fully able to prepare a defense. In our view, that is the fundamental purpose of the specific requirement contained in *N.J.S.A.* 19:29–2 and made applicable only to causes of action under *N.J.S.A.* 19:29–1e—that the complaint include the names

---

[3] The fact that the amended complaint was not again verified was not a basis for dismissal under these facts. *Perri v. Kisselbach,* 34 *N.J.* 84, 86, 167 *A.*2d 377 (1961); *In Re Smock,* 5 *N.J.Super.* 495, 500, 68 *A.*2d 508 (Law Div.1949) (allowing for broad powers of amendment in election contests so that the merits of the action are reached).

and election districts of illegal voters or rejected voters, if known. *Clee, supra,* 119 *N.J.L.* at 326, 196 *A.* 476.

Demonstrating further evolution since *Lehlbach,* we now differentiate between allegations that illegal votes were received, and allegations that legal votes were rejected. In the latter case, the successful challenger need not identify for whom the rejected voter voted or would have voted, only that the rejected votes were sufficient in number that, if all were credited to him, the results of the election would change. "Petitioners' burden may be met 'by a demonstration that had the [rejected] votes been cast for [them], the result would have been different.' " *Gray–Sadler, supra,* 164 *N.J.* at 483, 753 *A.*2d 1101 (quoting *In re Moffat, supra,* 142 *N.J.Super.* at 224, 361 *A.*2d 74); *see In Re Application of the Ocean County Comm'r of Registration,* 379 *N.J.Super.* 461, 469, 879 *A.*2d 1174 (App.Div.2005) ("A challenger has the burden of proving that one or more legal votes were rejected, and that the number of improperly rejected votes was sufficient to change the result of the election. The challenger is not required to prove that the rejected votes were cast for him or her . . . ."); *see also Kirk, supra,* 324 *N.J.Super.* at 553, 736 *A.*2d 546 ("It is not necessary to show for whom the voters would have voted if they were permitted to do so.").

The rationale for this distinction in the burden of proof becomes obvious upon some reflection. Frequently, the identity of legal voters whose votes are rejected or not recorded can never be ascertained. *Gray–Sadler, supra,* (write-in votes placed in the wrong location on the ballot and not counted); *Moffat, supra,* (malfunction of voting machines resulting in votes not counted); *In Re Gen. Election of Maplewood,* 255 *N.J.Super.* 690, 605 *A.*2d 1164 (Law Div.1992) (polling place closed prior to statutory time and unnamed voters turned away). When the wrongfully disenfranchised voter is able to be identified, he cannot be compelled to disclose for whom he did or would have voted. *See N.J.S.A.* 19:29–7 (only an illegal voter may be compelled to disclose how he

voted); *and see N.J.R.E.* 513 (privilege against disclosure of the tenor of one's vote unless the vote was cast illegally).

In this case, petitioner actually identified nine out of ten alleged legal, but rejected voters, by name, address, and election district. As such, she fully complied with *N.J.S.A.* 19:29–2. In requiring that petitioner also allege the rejected voters would have voted for her in numbers sufficient to change the election results, the motion judge applied the wrong standard of proof. Moreover, respondent's motion was directed to the sufficiency of the pleadings not the ultimate burden of proof.

Our conclusion that petitioner need not allege the level of specificity required by the motion judge with respect to alleged illegal voters is further supported by other provisions of the statute. While we have recognized that how an illegal voter voted may be proven by other than direct testimony, *see Murphy, supra,* 101 *N.J.Super.* at 170, 243 *A.*2d 832 (party affiliation and relations between the voter and the candidate and others actively interested in advancing the cause of the candidate are examples of circumstantial evidence proving for whom the vote was cast), the Legislature anticipated that such proof could require court intervention. By the statute's own terms, that would occur when "the person (was) called as a witness." *N.J.S.A.* 19:29–7. This presumes proceedings, such as discovery or the trial itself, that obviously occur after the pleadings are filed. Only when "the court, from [the voter's] examination, or otherwise, is satisfied that he was not a qualified voter in the election district where he voted," may the court compel him to disclose the tenor of his vote. *Ibid.* Thus, the statutory scheme anticipates the active involvement of the judge in first determining whether plaintiff has demonstrated an illegal vote was cast, and then compelling the disclosure of how the vote was cast. The motion judge placed an undue burden upon petitioner by requiring her to allege in her pleading how illegal votes were cast before allowing her to utilize the available statutory mechanisms to compel disclosure.

Given the expedited nature of the proceeding—it must be filed within thirty days of the election or within thirty days of the discovery of election documents supporting the cause of action—we conclude that the Legislature did not intend to require the challenger to plead her case with any more specificity than required by *N.J.S.A.* 19:29–2 since much of the evidence might be unavailable within such a short timeframe.

Lastly, the statute provides the court "with power to order any amendments in the petition, or proceedings as to form or substance." *N.J.S.A.* 19:29–5. This power to allow for such amendment evidences a legislative intention to allow the court to expeditiously decide the issues on the merits of the complaint, not on the sufficiency of the pleadings. As noted in *In Re Smock, supra,* 5 *N.J.Super.* at 500, 68 *A.*2d 508,

In view of the public interest in the subject matter, it is desirable that the controversy be determined on the merits and not upon artistry in pleading. In view of the broad power of amendment provided in [*N.J.S.A.*] 19:29–5, the obvious objective of the statute that the litigation be expedited is better served by getting to the ultimate substance of the controversy and determining its sufficiency.

The order dismissing the amended petition is reversed. In light of this result, we do not consider the other points petitioner raises on appeal. The matter is remanded for an expedited hearing pursuant to *N.J.S.A.* 19:29–1 to–14 and such other proceedings as are consistent with this opinion.

Reversed and remanded.