163 N.J. Super. 257 (1978)
394 A.2d 871
IN THE MATTER OF THE PETITION OF RICHARD HARTNETT, JR., TO CONTEST THE ELECTION OF J. STANLEY BARLOW TO THE OFFICE OF COUNCILMAN OF THE BOROUGH OF LEONIA PURSUANT TO N.J.S.A. 19:29-1 ET SEQ.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1978.
Decided October 27, 1978.
*259 Before Judges LORA, MICHELS and LARNER.
Mr. Michael I. Lubin argued the cause for defendant-appellant J. Stanley Barlow (Messrs. Wittman, Anzalone, Bernstein, Dunn & Lubin, attorneys).
*260 Mr. James I. Avignone argued the cause for plaintiff-respondent and cross-appellant Richard Hartnett, Jr. (Messrs. Huckin & Huckin & Avignone, attorneys).
Mr. John J. Degnan, Attorney General of the State of New Jersey, filed a brief amicus curiae (Mr. Stephen Skillman, Assistant Attorney General, of counsel; Ms. Janice S. Mironov, Deputy Attorney General, on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
This is an accelerated appeal from a determination in an election contest under N.J.S.A. 19:29-1(e) in which the judge set aside the election of J. Stanley Barlow in November 1977 as councilman at large in the Borough of Leonia. He declined to hold that the contestant Richard Hartnett, Jr. was the duly elected councilman, and thus declared the office vacant. Barlow appeals, contending that the voiding of the election is unwarranted under the facts and the law. Hartnett cross-appeals, asserting that the court erred in not declaring him to be the successful candidate.
As a result of an election in the Borough of Leonia, two Democrats, Robert Pacicco and J. Stanley Barlow, were certified as having been elected "at large" councilmen to two vacancies on the council. Two Republicans, Richard Hartnett, Jr. and Mary K. Slutz, were the unsuccessful candidates for those offices.
The tally of the votes cast for the slate of candidates, as confirmed by a recount, reflected the following:

 Pacicco  1,695 votes
 Barlow  1,541 "
 Hartnett  1,539 "
 Slutz  1,486 "

Thereupon Hartnett filed a petition in the Superior Court pursuant to paragraph (e) of N.J.S.A. 19:29-1, contesting the election of Barlow on the basis that illegal votes were *261 received and legal votes rejected sufficient to change the result as between the two of them. After a plenary hearing before a county district court judge assigned to hear the matter by the Bergen County assignment judge, the election of Barlow was set aside because of illegalities found by the court with regard to seven votes, involving Joseph and Lois Muzio, Brian and Susan Murphy, Maryann LoPresti, Susan Peters Green and Elizabeth Kaiser. This determination was based on findings that one legal vote was rejected, six illegal votes received, and that they were sufficient to change the result of the election to the office to which Barlow was certified.
For the purpose of clarity we shall consider the irregularities based upon the nature of the deficiency found by the trial court.

I. Absentee votes of Joseph and Lois Muzio and Brian and Susan Murphy
Dr. and Mrs. Muzio were duly registered voters who requested, received and returned absentee ballots for the election of November 1977 pursuant to N.J.S.A. 19:57-3. The undisputed evidence established that at the time of the election Dr. Muzio, a college professor, was in Honolulu, Hawaii, for one year on a "sabbatical exchange program" with his university and was accompanied by his wife, who was to participate in the program as a nurse. They intended to return to their home at 69 Glenwood Avenue, Leonia, in time to resume their teaching assignments in New York as of September 1, 1978. During their absence they leased the home to three young women for the period of August 1, 1977 to August 31, 1978, together with the furniture and furnishings contained therein.
The trial judge made the foregoing fact findings and proceeded to conclude therefrom that these voters did not reside in the State of New Jersey on election day and as a consequence were not qualified to vote by absentee ballot. He further found from circumstantial evidence that they "probably" *262 cast their votes for Barlow. Appellant, and the Attorney General as amicus, assert that the voiding of these ballots constitutes legal error.[1] We agree.
Apparently the trial judge reasoned from the Supreme Court opinion in Worden v. Mercer Cty. Bd. of Elections, 61 N.J. 325 (1972), that the sine qua non for qualification as a voter is actual residence in the State at the time of the election. It was his opinion that a temporary absence from the established residence accompanied by an express intention to return does not suffice to qualify for a valid vote in the district, whether it be in person or by absentee ballot.
Reliance upon Worden as a springboard for disqualifying the absentee voters herein is clearly misplaced. Worden held that students who are resident in a college community during their college careers could not be excluded from voting therein where they have not voted elsewhere. The Supreme Court applied a flexible approach so as to inhibit a limitation or restriction upon the voting rights of a class which has an interest in the college community and seeks to assert in good faith its fundamental right of suffrage in that community and no place else. In fact, the essence of the majority opinion is bottomed upon a finding of improper discrimination against such students and lays down the rule that they must be afforded the right to vote whether or not they plan to return to their previous residence, or plan to seek employment away from their previous residence, or plan to remain permanently in their college community, or in fact are uncertain as to their future plans. 61 N.J. at 348.
It is manifest, however, that this expansion of the right to vote in the place of temporary residence for students does not support the contention advanced by counsel for Hartnett *263 that a new criterion of residence rather than domicile has been established as a basis for denial of the right to vote. As Chief Justice Weintraub pointed out in his concurring opinion in Worden:
The concept of domicil is not constant. It is designed to assure fairness to the individual or the State or both in a given setting. Its ingredients therefore will vary, depending upon what is just and useful in a given context. [61 N.J. at 349]
Justice Jacobs, in the majority opinion, also noted the limited effect of Worden when he stated:
Although this action is taken without abandonment of the domicil requirement it may have pertinence to the growing recognition that domicil is not a unitary concept and that its application may vary in different contexts. See Reese, "Does Domicil Bear a Single Meaning?," 55 Colum. L. Rev. 589 (1955); Weintraub, "An Inquiry Into the Utility of `Domicile' as a Concept in Conflicts Analysis," 63 Mich. L. Rev. 961, 983-86 (1965); Restatement (Second) Conflict of Laws § 11, comment o at 47-50 (1971); cf. Gladwin v. Power, 21 A.D.2d 665, 249 N.Y.S.2d 980, 982 (1st Dept. 1964); In re Jones' Estate, 192 Iowa 78, 182 N.W. 227, 229 (1921). [Id. at 343]
Although the New Jersey Constitution and election statutes speak in terms of residence requirements, it has long been held that the normal test of voter qualification is that of a domicile maintained in the State and voting district. See State v. Benny, 20 N.J. 238, 252-255 (1955); State v. Atti, 127 N.J.L. 39, 41-42 (Sup. Ct. 1941), aff'd 128 N.J.L. 318 (E. & A. 1942). And where a person has and maintains a permanent home in the voting district he has the right to vote in that district despite his temporary absence therefrom, provided that he does not vote elsewhere and the factual context reveals his intention to return to that home as his permanent abode. See Cadwalader v. Howell, 18 N.J.L. 138 (Sup. Ct. 1840); In re McCarthy, 18 N.J. Misc. 5 (Cir. Ct. 1939); Schweitzer v. Buser, 15 N.J. Misc. 217 (Cir. Ct. 1936); *264 Thompson v. Emmert, 242 Ky. 415, 46 S.W.2d 502 (Ct. App. 1932); Groves v. Committee of Rutherford Cty., 180 N.C. 568, 105 S.E. 172 (Sup. Ct. 1920); Kreitz v. Behrensmeyer, 125 Ill. 141, 195, 17 N.E. 232, 253 (Sup. Ct. 1888).
This conclusion is mandated not only by the conceptual significance of the term "domicile" but also by the fairness to the individual and the State in the factual setting demonstrated by the record herein. If Dr. and Mrs. Muzio evince such a continued interest in their community as to avail themselves of the mechanism of an absentee ballot in order to express their preference for those selected to govern the affairs of that community, and do so with the knowledge that the duly elected officials will be in power when they return to Leonia, it would be violative of their fundamental rights to disenfranchise them. Under the factual circumstances involved with respect to these absentee voters, we find no state interest which would impel a conclusion that they should be deprived of the exercise of their right of suffrage while they otherwise qualify as legal voters.
Brian and Susan Murphy voted by absentee ballot from Charlotte, North Carolina. They were qualified registered voters in the district of the locale of their permanent single-family home at 169 Ames Avenue, Leonia. They leased this home to another with all its furniture and furnishings for the period of August 1, 1977 to July 31, 1978, and the trial judge found as a fact that they intended to return thereto when the lease expired. Despite this factual finding, the judge voided these ballots on the same rationale as his ruling on the Muzio ballots. However he found that there was insufficient evidence to determine for whom the votes were cast.
What we have said with respect to the Muzios is equally applicable to the issue of the validity of the Murphy absentee votes. We therefore find that the court was in error in declaring them to be illegal.

*265 II. Voters who failed to notify the Commissioner of Registration of a move from one district to another in the municipality  Maryann LoPresti and Susan Peters Green
The trial judge found that Maryann LoPresti voted in District No. 1 despite the fact that she had moved out of that district in July 1977 without complying with the notice provisions of N.J.S.A. 19:31-11. He therefore concluded that her vote was illegal, although he found no evidence to support a determination of how her vote was cast.
In the case of Susan Peters Green, she was registered as Susan Peters and married on October 16, 1976 with a change of name to Susan Green. In addition, she voted in the November 1977 election in District No. 6, which was appropriate for her home prior to marriage, while her abode with her husband was located in another district. Accordingly, the trial judge found that her vote was illegal in violation of the notice provisions of N.J.S.A. 19:31-11 and the reregistration provisions of N.J.S.A. 19:31-13. He also found from the evidence that Mrs. Green voted for Barlow.
The record is clear that neither one of these voters was formally challenged at the polls and that there is no suggestion of fraud or duplicate voting.[2]
While there may be a debatable question whether the failure to submit a notice of a move from one district to another pursuant to N.J.S.A. 19:31-11 or the failure to reregister on the assumption of a married name pursuant to N.J.S.A. 19:31-13 is of such significance as to warrant setting aside an election for an at large office,[3] the ultimate *266 basis for our determination of this appeal makes it unnecessary to embark upon a resolution of that issue, and we therefore leave it for another day.
We arrive at this view because the rejection of the vote of Maryann LoPresti, even if assumed to be illegal, could not properly be considered by the court in the final count because it could not serve to satisfy the statutory requirement that it be sufficient to change the result of the election.
In Application of Murphy, 101 N.J. Super. 163 (App. Div.), certif. den. 52 N.J. 172 (1968), we noted that where the contest relates to the receipt of illegal votes under N.J.S.A. 19:29-1(e):
[T]he contestant has not only the burden of showing that illegal votes were cast in number sufficient to change the result if they had in fact been cast for the contestee, but also the burden of showing, to the extent possible under the circumstances, for whom the illegal votes were cast. [101 N.J. Super. at 167]
See also, Lehlbach v. Haynes, 54 N.J.L. 77, 80-81 (Sup. Ct. 1891).
It is crystal clear that there is no evidence whatever, direct or circumstantial, to establish how LoPresti voted, and, no effort made to prove such a fact. The trial judge thus properly found "there is no evidence in the case as to how she voted." In the absence of such evidence, it is equally probable that she voted for one of the other three candidates rather than for Barlow. And in the absence of proof of some reliability that she did vote for Barlow, he should not be penalized by the reduction of her allegedly illegal vote from his total. Contrariwise, the vote of Susan *267 Green for Barlow, if considered illegal, is properly deductible from Barlow's total.

III. Rejection of Illegal Vote  Elizabeth Kaiser
When Elizabeth Kaiser appeared at the polls to vote she was prevented from voting because her page was missing from the registration book. Apparently this was an administrative error since she was a qualified registered voter. She was advised by the local board to go to borough hall and upon execution of an affidavit she would be permitted to vote. She chose not to do so and therefore did not vote. The trial judge found that her "legal vote" was "rejected" within the intendment of N.J.S.A. 19:29-1(e) and, when added to the illegal votes received, was sufficient to change the result of the election.
In reaching his conclusion on the Kaiser vote the judge analogized the facts to those in In re Application of Moffat, 142 N.J. Super. 217 (App. Div.), certif. den. sub nom. Princeton Tp. v. Bleiman, 71 N.J. 527 (1976). In our opinion this case is inapposite and does not warrant the finding below.
In Moffat the court was faced with the malfunction of the voting machine in one district so that the recording mechanism for one of the candidates, Moffat, failed to operate after the first vote was cast. Five voters testified or certified that they had voted for Moffat, who was one of four candidates running for two seats from that district on the township committee.
The Appellate Division affirmed the trial court's determination that in the particular district only 148 votes were recorded out of a possible 286 and that the obvious rejection of a number of legal votes was sufficient to affect the outcome of the election as between Moffat and Peyton, the successful front runner. The election of Peyton was therefore set aside. The opinion of this court pointed out:
*268 That legal votes were rejected here is beyond doubt. Not only was there proof of five unregistered votes for Moffat, but there is also the fair inference that others were likewise unrecorded, in view of the fact that 100 votes were cast for Moffat's running mate as against only 31 and 16, respectively, for the opponents. [142 N.J. Super. at 223-224]
And after an analysis of the evidence relating to the votes for the respective candidates and the probability that it affected the result of the election so far as Moffat was concerned, the court concluded:
Where irregularities are such "that the court cannot with reasonable certainty determine who received a majority of the legal votes, the election should be set aside." 3 McQuillin, Municipal Corporation, § 12.24 at 152. [Id. at 226]
In our view, the factual situation relating to Mrs. Kaiser is distinguishable from that in Moffat and should not serve to overturn the election of Barlow. When dealing with the malfunction of a machine which affects the will of a substantial number of voters, the election takes on the aura of uncertainty and unfairness calling for judicial intervention. And if the evidence supports a finding that sufficient numbers were prevented from voting for reasons beyond their control so as to create the potential of a different result, the election should be set aside.
This is far different from a human error in the registration book which simply incommodes one registrant. Mrs. Kaiser was not prevented from voting. She could have voted through the simple expedient of executing an affidavit at borough hall where the original records are kept. Her intransigence in refusing to comply with reasonable and normal requirements designed to assure honest voting should not result in the extreme relief of voiding an election. As we view this voter's position, she can be equated with a voter who must wait in line to vote and who gives up his suffrage right because of impatience or inconvenience. Manifestly, such a complaint of a disappointed voter could not serve as a ground *269 for setting aside an election on the basis that a legal vote was rejected. Similarly, Mrs. Kaiser's personal preference to give up her vote rather than complying with the necessary procedure does not fall into the category of "legal votes rejected" contemplated by the Legislature. Her vote was not rejected. It was delayed for further verification. Her failure to vote was the result of her own voluntary decision.
In view of the foregoing, the computation by the trial court of Mrs. Kaiser's failure to vote in the number of irregularities was unwarranted.

IV.
As a result of our analysis of the questioned votes there remains but one which might qualify for elimination as both illegal and having been cast for Barlow, namely, that of Susan Green. Since Barlow's victory over Hartnett was by a margin of two votes, he still remains the properly elected councilman by a margin of one vote. Because of the urgency to resolve this matter prior to the November 1978 election, we exercise original jurisdiction under R. 2:10-5 and direct that a certificate of election be issued to J. Stanley Barlow as councilman at large of the Borough of Leonia.
Reversed, no costs.[4]
NOTES
[1] The Attorney General has filed an amicus brief limited to the important public issue relating to the propriety of the rejection of absentee ballots of qualified voters who are not resident in the district on election day but intend to maintain and return to their domicile therein.
[2] There is some indication that there was a tentative challenge by some unknown person as to Susan Green which was withdrawn because the municipal election was limited to at large council offices.
[3] We refer to the following cases which emphasize the application of a rule of liberality in construction of the election regulations, and that mere irregularities involving compliance with provisions of the election laws, although sufficient to challenge the right to vote at the polls, are not sufficient to set aside an election and thereby defeat the will of the electorate. See, e.g., In re Smith, 59 N.J. 236 (1971); Wene v. Meyner, 13 N.J. 185 (1953); Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952); In re Clee, 119 N.J.L. 310 (Sup. Ct. 1938); In re Atlantic Cty. Bd. of Elections, 117 N.J. Super. 244 (App. Div. 1971); Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951); In re Smock, 5 N.J. Super. 495 (Law Div. 1949).
[4] Appellant raised the issue of the jurisdiction of the county district court judge to sit in an election contest as a legislative agent under N.J.S.A. 19:29-2 which provides that such a contest shall be heard by a judge of the Superior Court. See In re Mayor, etc., South River, 27 N.J. Super. 109 (Law Div. 1953). In view of our exercise of original jurisdiction, we find no need to consider this question.