201 N.J. Super. 484 (1985)
493 A.2d 580
IN THE MATTER OF THE APPLICATION OF LEE LANGBAUM TO CONTEST ELECTION OF DIANE SANK TO THE OFFICE OF COUNCILPERSON OF THE BOROUGH OF ENGLEWOOD CLIFFS.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 1985.
Decided May 20, 1985.
*486 Before Judges KING, DEIGHAN and BILDER.
Dennis J. Oury argued the cause for appellant (Mariniello & Oury, attorneys; Joseph R. Mariniello, on the brief).
John M. Carbone argued the cause for respondent (Carbone and Faasse, attorneys; John M. Carbone, on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is an appeal from a determination in an election contest under N.J.S.A. 19:29-1 in which the judge held that respondent *487 Diane Sank was a duly elected councilperson of the Borough of Englewood Cliffs (Borough). Involved are the validity of seven absentee ballots and the qualifications of five other voters.
On November 6, 1984 a general election was held in the Borough to choose two members of the local governing body. Candidates for the two offices were petitioner Lee Langbaum, respondent Diane Sank, E. Carter Corriston and Martin Katz. After the election it appeared that petitioner and respondent were tied. The vote was recorded as follows:

 E. Carter Corriston 1651
 Lee Langbaum 1529
 Diane Sank 1529
 Martin Katz 1437

Thereafter there was a recount, N.J.S.A. 19:28-1 et seq., and it was determined that Ms. Sank won by one vote. The final results were certified as follows:

 E. Carter Corriston 1651
 Diane Sank 1530
 Lee Langbaum 1529
 Martin Katz 1439

Petitioner thereafter brought the instant action in which he alleged (1) certain persons voted illegally; (2) legal votes were cast which were not counted; and (3) legal ballots belonging to the Borough were inadvertently intermixed with ballots belonging to the City of Englewood. At a hearing on the matter, petitioner Langbaum identified five voters who he contended were not qualified to vote for the contested position because they were not residents of the municipality, N.J.S.A. 19:4-1, and seven absentee ballots which he contended had been improperly invalidated by the Board of Elections for failure to comply with the statutory requirements as to their sealing. N.J.S.A. 19:57-23.
*488 The City of Englewood ballots were reviewed and checked. No Borough ballots were found among them. Petitioner Langbaum does not appeal from this determination.
With respect to the alleged illegal voters, the trial judge found that four were qualified and apparently one was not. The evidence suggests the illegal voter cast his ballot for petitioner Langbaum; thus this did not affect the result  or at least the trial judge, who made no findings, treated it thusly. With respect to the absentee ballots, the trial judge found all of them to be invalid, thus sustaining the action of the Board of Elections. On appeal petitioner contends the evidence did not support findings that the four voters resided in the Borough and that the absentee ballots were valid as a matter of law. Petitioner also contends the testimony of the illegal voter as to his vote was incredible and should be disregarded.

The Absentee Ballots
N.J.S.A. 19:57-16 provides that an absentee ballot shall be accompanied by two envelopes, one of which is large enough to contain the other. The larger, intended to be the outer envelope, is addressed to the appropriate Board of Elections and has instructions printed upon it directing that it be sealed before it is mailed and given for delivery. The smaller is intended to contain the ballot and has on the outside a detachable flap upon which a form is printed which the voter uses to certify that he or she is the person who applied for the absentee ballot and that, except for legislatively approved aid, the voter marked and sealed the ballot in secret. After the absentee ballot has been marked
... such ballot shall be placed in said inner envelope, which shall then be sealed, and the voter shall then fill in the form of certificate attached to said inner envelope, at the end of which he shall sign and print his name in his own handwriting. The inner envelope with the certificate shall then be placed in said outer envelope, which shall then be sealed. [N.J.S.A. 19:57-23]
Seven ballots were declared invalid and rejected by the Board of Elections because the ballots were not sealed in the inner *489 envelope. All the outer envelopes were sealed and had not been tampered with. In five cases (P-1 through P-5), the certification was properly completed, the ballot marked and the inner envelope present. The only deficiency was that the ballot had not been sealed in the inner envelope. In one of the remaining cases (P-6) no certification was enclosed and, in the final case (P-7), the ballot was not in the inner envelope but the inner envelope was sealed and the certificate appears to be enclosed therein. The trial judge agreed with the Board:
I've concluded that the integrity and secrecy of the absentee ballot procedure was jeopardized when the seven voters in question attempted to exercise their right to vote by way of absentee ballot. It's clear that with regard to one ballot which has been marked P-7 in evidence, there was no certificate in the outer envelope; I find that that was an invalid ballot.
With regard to P-6 which was a military ballot, there was no inner envelope and no certificate as required by statute and I find that that was an invalid ballot. Ballots which have been marked P-1 through P-5 all contained the certifications required by the statute within the outer envelope, however, the voters in those cases did not exercise their right to cast an absentee ballot in the manner established by the legislature, they did not follow the statutory procedure. The election officials invalidated those ballots because of the failure to follow the statutory procedure. I've concluded the ballots are invalid for the same reason.
In Kilmurray v. Gilfert, 10 N.J. 435 (1952), Chief Justice Vanderbilt said: "Election laws are to be liberally construed so as to effectuate their purpose. They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons." Id. at 440 (citations omitted). Although disenfranchisement is an end reasonably to be avoided, "it must be kept in mind that the statutory right to vote as an absentee is not an absolute right and is subject to proper legislative exception and limitation." See In re Battle Petition, 190 N.J. Super. 232, 236 (App.Div. 1983), modified 96 N.J. 63 (1984).
The technical requirements of N.J.S.A. 19:57-23 must be read in the light of the overall legislative pattern. It must be read in a common-sense way which accords with the legislative purpose. See Marotta v. Burgio, 185 N.J. Super. 172, 179 *490 (Law Div. 1982). See also City of Newark v. County of Essex, 160 N.J. Super. 105, 113 (App.Div. 1978), aff'd 80 N.J. 143 (1979). As we noted in Battle, deterrence of fraud  maintenance of the integrity of the elective process is one of the primary legislative concerns. Battle, supra, 190 N.J. Super. at 236-237. We entertain no doubt that it is this consideration that dictated the requirements that the certification be furnished and that the outer envelope be sealed. The inner envelope, however, addresses a different consideration  the secrecy of the ballot. This, in an isolated case, is more of a personal right of the voter than a risk to the integrity of the process.[1] Voiding the ballot and thus disenfranchising the voter is too harsh a remedy where the deficiency does not affect the integrity of the electoral process. Cf. id. at 243. The distinction we draw has been recognized by the Legislature in N.J.S.A. 19:57-24 where it provides:
Any absentee ballot which is received by a county board of elections shall be rejected if both the inner and outer envelopes are unsealed or if either envelope has a seal that has been tampered with. [Emphasis added.]
We conclude therefore that the absentee ballots which were received in sealed, untampered outer envelopes and contained complete certifications  where the only deficiency was the failure to seal the ballot in the inner envelope  (P-1 through P-5) are valid and should be counted in the election. If the certification which accompanied the final ballot (P-7) was complete, this vote is also valid and should be counted.

The Allowed Votes
Five voters were challenged by petitioner Langbaum as not being bona fide residents of the Borough. N.J.S.A. 19:4-1. *491 The test of residence for purposes of voter qualification is that of a domicile maintained in the voting district. See In re Petition of Hartnett, 163 N.J. Super. 257, 263 (App.Div. 1978). "And where a person has and maintains a permanent home in the voting district he has the right to vote in that district despite his temporary absence therefrom, provided that he does not vote elsewhere and the factual context reveals his intention to return to that home as his permanent abode." Id.
The four voters who were found by the trial judge to be qualified all evidenced a continued attachment to the Borough such as would justify their claimed right of suffrage. The trial judge's conclusion in this regard finds ample support in the record. See State v. Johnson, 42 N.J. 146, 162 (1964). The right to vote of the fifth, Mr. Berk, was apparently not upheld. The evidence required such a conclusion. While there was no specific finding made, it seems implicit in the final result. A finding that Mr. Berk did not vote for respondent Sank also seems implicit in the final result. From an examination of the testimony with respect to his vote, we are not satisfied that there was sufficient evidence to determine for whom his vote was cast. Further testimony is required. The trial judge should make specific findings of fact as he carefully did with respect to the other voters. R. 1:7-4.
The matter is remanded for further proceedings in accordance with this opinion which shall include an immediate hearing which will vindicate the right of the public and the candidates to a final determination forthwith. Jurisdiction is not retained. On any further appeal, a motion to accelerate should immediately be filed with this Panel. See R. 1:2-5(1); R. 2:11-1(a).
The judgment is partially affirmed and partially modified.
NOTES
[1] Our examination of the outside of the large envelopes discloses that all seven were separately mailed by the voter, four from distant locations: Annapolis, Md., Philadelphia, Pa., Grenada, and Washington, D.C.