31 A.3d 945

IN THE MATTER OF THE NOVEMBER 2, 2010 GENERAL ELEC-
TION FOR THE OFFICE OF MAYOR IN THE BOROUGH OF
SOUTH AMBOY, MIDDLESEX COUNTY, NEW JERSEY.

Superior Court of New Jersey
Appellate Division

Argued October 4, 2011—Decided November 23, 2011.

Before Judges MESSANO, ESPINOSA and KENNEDY.

*Christopher F. Struben* argued the cause for appellant/cross-respondent Mary O'Connor (*Michael A. Percario,* attorney; *Mr. Struben* and *Roger J. Ermola II,* on the brief).

*George N. Cohen,* Deputy Attorney General, argued the cause for respondent Middlesex County Board of Elections (*Paula T. Dow,* Attorney General, attorney; *Mr. Cohen,* on the brief).

*Karl P. Kemm* argued the cause for respondent/cross-appellant Fred Henry (*Hoagland, Longo, Moran, Dunst & Doukas, LLP,* attorneys; *Mr. Kemm* and *Michael J. Baker,* of counsel; *Albert J. Alvarez,* on the briefs).

*Flavio L. Komuves* argued the cause for amicus curiae American Civil Liberty Union of New Jersey (*Zazzali, Fagella, Nowak, Kleinbaum & Friedman,* attorneys; *Mr. Komuves,* of counsel and on the brief).

The opinion of the court was delivered by

KENNEDY, J.S.C. (temporarily assigned).

Candidate Mary O'Connor (O'Connor), who placed second in the November 2, 2010 general election for the office of the mayor of the Borough of South Amboy (South Amboy), appeals from a decision of the Law Division denying her petition challenging the election. Fred Henry (Henry), the winning mayoral candidate, cross-appeals challenging the trial court's order disallowing the vote of Carol McGloan (McGloan). We affirm.

Four candidates ran for office of mayor of South Amboy in the general election held on November 2, 2010. The voting yielded the following results:

Fred Henry–1,128;
Mary O'Connor–1,127;
Vince Mackiel–196;
John Dragotta–100.

O'Connor, having been defeated by one vote, filed a petition seeking a recount. On November 19, 2010, a recount of all mail-in ballots, provisional ballots, and voting machine totals resulted in no change.

On November 29, 2010, O'Connor filed a petition for election contest pursuant to *N.J.S.A.* 19:29–1, asserting that the votes of three registered voters were not counted; that two people voted who were not residents of South Amboy; and that five provisional ballots were cast by voters who had changed address within twenty-one days of the election and who failed to advise the Board of Election as required by statute. She also alleged other improprieties not at issue here.

On December 14, 2010, the trial judge ordered a further recount after the Middlesex County Board of Elections discovered six previously uncounted provisional ballots. On the same day, the recount was completed and one vote for Henry was disqualified because the Board determined the voter was not entitled to vote in the election. With respect to the six previously uncounted provisional ballots, three were cast for Henry and three were cast for candidate Mackiel. Accordingly, the Middlesex County Board of Elections certified the election results as follows:

Henry–1,130;
O'Connor–1,127;
Mackiel–199;
Dragotta–100.

On December 22, 2010, Henry filed a cross-petition for election contest asserting that five persons had been permitted to vote in violation of law; and that four voters were impermissibly denied the right to vote. Henry demanded relief "[s]hould the petition for an election contest by petitioner Mary O'Connor be successful."

The trial judge, after granting an application permitting the American Civil Liberties Union of New Jersey (ACLU) to appear as *amicus curiae,* conducted a hearing on January 10 and 11, 2011. Eleven witnesses testified and on January 11, 2011, the trial court rendered an opinion upholding the election of Fred Henry as mayor of South Amboy by two votes.

On appeal, O'Connor claims that the trial court erred in not permitting Eric Cheng and Alexa Hess to vote in the election and in allowing Grace Hoffman's vote to be counted. O'Connor also claims that the trial court erred in not allowing her to amend her petition on the first day of the hearing to challenge three additional voters and in not declaring a new election based upon the handling of provisional ballots by the Middlesex County Board of Elections and the Middlesex County Clerk. Henry cross-appeals from the court's determination to disallow the vote of Carol McGloan.

We first review the testimony and findings of the trial court respecting the four citizens whose votes or attempts to vote are in controversy and thereafter we consider the determination of the trial court respecting the attempt to amend the petition and the handling of the provisional ballots.

## I. *FACTUAL BACKGROUND*

### A. *CHALLENGES TO INDIVIDUAL VOTERS*

#### 1. *Eric Cheng*

Eric Cheng is married and has three children who attend the South Amboy public schools. He resides in South Amboy and has lived there for over ten years. After moving to South Amboy, Cheng attempted to vote there but was told that he had to vote in Sayreville. Cheng thereafter registered as a voter in Sayreville and voted in Sayreville elections three or four times over the years. Cheng contacted the Middlesex County Board of Elections prior to the November 2, 2010 general election in South Amboy and again was told that he could not vote in South Amboy and would have to vote in Sayreville. Accordingly, Cheng did not

attempt to vote in South Amboy on November 2, 2010, but, instead, voted in Sayreville. The trial court decided not to allow Cheng to vote anew in South Amboy, explaining, "[h]e voted in Sayreville. That would give him a double franchise."

## 2. *Grace Hoffman*

Grace Hoffman voted in South Amboy in the November 2, 2010 general election although her home at that time was in Sayreville, New Jersey. Her driver's license listed the Sayreville address as her residence and her bills were all sent to the Sayreville address. Hoffman had previously lived in South Amboy but moved to Sayreville in 2003. When she moved, she never advised the Middlesex County Board of Elections to change her address because she was living half the time with her ill mother in South Amboy. When Hoffman's mother became too ill to maintain her home in South Amboy, Hoffman in 2009 returned to her own home in Sayreville where she lived "100 percent of the time" up to and after the election in 2010. She listed her Sayreville house for sale on December 6, 2010, and was planning to move back to South Amboy in February 2011. She voted in South Amboy during the November 2, 2010 general election because "I grew up in South Amboy, I voted there all my life."

The trial court allowed Hoffman's vote to count in the South Amboy election despite finding that she owned a home in Sayreville and lived there exclusively on the date of the election. The court found that she lived half the time in South Amboy with her ill mother between 2003 and 2008 and

[s]he has just contracted for a home in South Amboy and she is moving back to South Amboy and the testimony was she loved South Amboy. The test of domicile is whether or not a person has the intent to make a particular location his or her permanent home. [I] [a]m [s]atisfied that the evidence presented by Hoffman is that she intended to make South Amboy her permanent home and therefore I believe that Hoffman's vote should count in this proceeding.

## 3. *Alexa Hess*

Alexa Hess was nineteen years of age on the date of the election and lived in South Amboy. She first received her driver's license

in 2008 and "renewed it" on May 6, 2010, at the "Hazlet DMV." When she renewed her license, "they asked if I was registered to vote and I said no and they said do you want to be and I said yes and they said okay and marked it on the piece of paper and I went and got my new license and that's all I had gotten." She signed her driver's license and received the signed license back after it had been laminated.

When she went to the poll location with her mother on the day of the election, Hess was told that she was not "on the roster." She was then given a provisional ballot upon which she cast her vote. Her vote was later disallowed by the Middlesex County Board of Elections.

The trial judge upheld the rejection of Hess's provisional ballot explaining, "[h]ad she signed something at the DMV, had she signed a document beside her driver's license, I might have a different view. I understand that a voter cannot be misled by a government official at the cost of his or her ballot but I cannot permit Hess's vote to count."

### 4. *Carol McGloan*

Carol McGloan owns a commercial property in South Amboy that has two addresses: South Broadway and John Street. She also owns two properties in Sayreville that she rents to tenants.

The commercial property in South Amboy is the site of McGloan's beauty salon as well as two apartments that are rented to tenants. There is a back room in the beauty salon with a washer and a dryer and a sofa, but no kitchen unit and no bedroom. There is direct access from the beauty salon into the back room. John Street is listed on McGloan's driver's license and she has her bills sent to that address. Most of the time, however, she stays at the home of her disabled brother in Sayreville. McGloan testified that she sleeps on the sofa in the back room of her beauty salon when she is not staying with her brother in Sayreville.

The trial judge found it "very difficult to assess the testimony of McGloan." He questioned her credibility and believed her answers to be "formulaic." He concluded:

> I understood her testimony that from time to time she resides at ... John Street. I also understood her testimony that from time to time, she resided at ... her brother's address and she cared for her disabled brother [to whom] she is devoted. She's a person of considerable character ... [b]ut I agree that based on her lack of credibility, based on the lack of proofs that the ... John Street address is not fully equipped for residential occupancy where she occupies it, especially now with both of the apartments filled by tenants. I do not believe that her vote should be counted and I am going to direct the board to disregard it.

## B. *THE PROPOSED AMENDMENT TO THE O'CONNOR PETITION*

On January 10, 2011, prior to taking testimony, the trial court recited some of the procedural history preceding the hearing. On December 21, 2010, the court had a telephone conference with all counsel and set January 10 and 11, 2011, for the hearing on the election contest. The parties submitted briefs on January 3 and 5, 2011.

During his opening statement, counsel for O'Connor for the first time claimed "there were other persons [who] voted that we don't think live in the town" and he explained "there's a Brian McQuade and there's a Desai family who ... did not live in South Amboy." Counsel stated that he had a deed and a mortgage showing that McQuade owns property in Sayreville and that the Desais were allegedly voting in South Amboy despite selling their property there years prior to the election. Counsel claimed he first learned these facts over the weekend before the hearing.

At the conclusion of testimony on January 10, 2011, counsel asked the court to "consider" the evidence with respect to the Desais and McQuade. The trial court instructed him to provide the information to his adversaries and indicated he would hear "argument on that tomorrow morning."

The next day, after his decision on the merits, the trial judge denied the application as to McQuade and the Desais. The judge

cited *N.J.S.A.* 19:29–5 which provides that the proceedings "must be similar to those of a civil action" and stated he could "no more permit counsel on the day of trial to raise new voters whose votes should be counted than I could permit [opposing counsel] to do the same thing." Counsel for O'Connor thereafter proffered that he could elicit telephonic testimony from one of the owners of the property formerly owned by Desai.

## C. *UNUSED PROVISIONAL BALLOTS*

The testimony before the trial court indicated that each of the nine South Amboy election districts was provided with one provisional ballot packet that contained fifty ballots. Four hundred forty-seven provisional ballots were returned of which twenty-two were used and four hundred twenty-five were unused. Three unused provisional ballots were not discovered, but Delores Anderson, representative of the Middlesex County Clerk's office, testified that no actual count was ever taken of the number of blank provisional ballots received from the printer and sent out to the nine South Amboy polling places. Also, one hundred unused provisional ballots remained with the municipal clerk during election day and were not provided to any of the nine South Amboy polling locations.

The trial judge dismissed this challenge noting that the discrepancy of three unused provisional ballots cannot "mandate a new election." The judge noted that the unused ballots are "accounted for in batches of fifty, but there is no mandate in the law that the election officials count the ballots to confirm that each segment has fifty." There was no claim that used provisional ballots were not counted and the judge explained that the alleged absence of three unused ballots would not change the election result.

## II. *ANALYSIS OF THE LAW*

We shall first consider the challenges regarding individual voters and thereafter consider the claims pertaining to the proposed amendment and the unused provisional ballots.

■ *N.J.S.A.* 19:29–1(e) provides that the election of any person to public office may be contested, "when illegal votes have been received or legal votes rejected at the polls sufficient to change the result[.]" One who challenges an election must prove by a preponderance of the evidence that illegal votes were received or legal votes were rejected, *In re Gen. Election of Nov. 5, 1991 for Office of Twp. Comm. of Maplewood*, 255 *N.J.Super.* 690, 702–03, 605 *A.*2d 1164 (Law Div.1992), and that the number of such votes was "sufficient to change the result." *In re Application of Moffat*, 142 *N.J.Super.* 217, 224, 361 *A.*2d 74 (App.Div.), *certif. denied sub nom. Princeton v. Bleiman*, 71 *N.J.* 527, 366 *A.*2d 682 (1976).

Election laws are designed to deter fraud, safeguard the secrecy of the ballot and prevent the disenfranchisement of qualified voters, and consequently, election laws are to be construed liberally. *In re Gray–Sadler*, 164 *N.J.* 468, 474–75, 753 *A.*2d 1101 (2000). The fundamental purpose of an election contest is to "ascertain the true will of the electorate." *Kirk v. French*, 324 *N.J.Super.* 548, 552, 736 *A.*2d 546 (Law Div.1998)(citing *Wene v. Meyner*, 13 *N.J.* 185, 196, 98 *A.*2d 573 (1953)).

Appellate review of a trial judge's findings of fact and conclusions of law is limited by well settled principles. "We are not to review the record from the point of view of how we would have decided the matter if we were the court of first instance." *Sebring Assocs. v. Coyle*, 347 *N.J.Super.* 414, 424, 790 *A.*2d 225 (App.Div.), *certif. denied*, 172 *N.J.* 355, 798 *A.*2d 1269 (2002). Findings by the trial judge are considered binding on appeal "when supported by adequate, substantial and credible evidence." *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." *Fagliarone v. Twp. of N. Bergen*, 78 *N.J.Super.* 154, 155, 188 *A.*2d 43 (App.Div), *certif. denied*, 40 *N.J.* 221, 191 *A.*2d 61 (1963). We neither weigh the evidence

anew, *Cintrone v. Hertz Truck Leasing & Rental Serv.*, 45 *N.J.* 434, 440, 212 *A.*2d 769 (1965), nor do we determine the credibility of witnesses. *Penpac, Inc. v. Passaic County Utils. Auth.*, 367 *N.J.Super.* 487, 507, 843 *A.*2d 1153 (App.Div.), *certif. denied*, 180 *N.J.* 457 (2004). Our review of a trial court's legal conclusions is de novo. *30 River Court E. Urban Renewal Co. v. Capograsso*, 383 *N.J.Super.* 470, 476, 892 *A.*2d 711 (App.Div.2006) (citing *Rova Farms, supra*, 65 *N.J.* at 483–84, 323 *A.*2d 495).

Applying these principles, we affirm the trial court's findings and conclusions with respect to Cheng, Hess and McGloan. Further, while we disagree with the court's conclusions with respect to Hoffman, our determination as to this single voter is not "sufficient to change the result" of the election, *N.J.S.A.* 19:29–1(e), given that Henry was the victor by two votes.

As to Cheng, while there was evidence that he was domiciled in South Amboy on the day of the election, he conceded that he nonetheless voted in Sayreville, rather than in South Amboy. Having already cast his vote in Sayreville, he cannot be permitted to vote in South Amboy in the same election. "[W]here a person has and maintains a permanent home in the voting district he has the right to vote in that district ... provided that he does not vote elsewhere...." *In re Petition of Hartnett*, 163 *N.J.Super.* 257, 263, 394 *A.*2d 871 (App.Div.1978).

As to Hess, the trial judge determined that there was insufficient evidence to show that she had completed the voter registration form which apparently had been provided to her when she went to renew her license in the Hazlet office of the Motor Vehicle Commission. *N.J.S.A.* 19:31–6(b) provides that any person qualified to vote in an election shall be entitled to vote if the person shall have registered to vote within the time prescribed by statute by "completing a voter registration form" while applying for a license from an agent of the Division of Motor Vehicles. *See N.J.S.A.* 39:2–3.2.

*N.J.S.A.* 19:31–1 provides: "No person shall be permitted to vote at any election unless such person shall have been registered in the manner hereinafter in this chapter provided." *N.J.S.A.* 19:31–6.4 directs the Secretary of State to prepare voter registration forms and states that such forms "shall require ... information ... in substantially the following form:

```
VOTER REGISRATION APPLICATION

Print clearly in ink. Use ballpoint pen or
marker.
(1)This form is being used as (check one):

[] New Registration
[] Address change
[] Name Change
(2)Name:. . . . . . . . . . . . . . . . . .
          Last      First     Middle
(3)Are you a citizen of the United States of
America? []Yes []No
(4)Will you be 18 years of age on or before
election day? []Yes []No
If you checked 'No' in response to either of
these questions, do not complete this form.
(5)Street Address where you live:
. . . . .`. . . . . . . . . . . . . . . . .
Street Address                  Apt. No.
. . . . . . . . . . . . . . . . . . . . . .
```

(6)City or Town     County     Zip Code
(7)Address Where You Receive Your Mail(if different from above):
. . . . . . . . . . . . . . . . . . . . . . .
(8)Date of Birth
. . . . . . . . . . . . .
Month     Day     Year
(9)(a)Telephone Number (optional). . . . . . .
(b)E-Mail Address (optional). . . . . . . . .
(10)Name and address of Your Last Voter Registration
. . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . .
(11)If you are registering by mail to vote and will be voting for the first time in your current county of residence, please provide one of the following:

(a)your New Jersey driver's license number:
. . . . . . . . . . . . . . . . . . . . . . .
(b)the last four digits of your Social Security Number:
OR submit with this form a copy of any one of the following documents: a current and valid photo identification card; a current utility bill, bank statement, government check, pay check or any other government or other identifying document that shows your name and current address.  If you do not provide either your New Jersey driver's license number or the last four digits of your Social Security Number, or enclose a copy of one of the documents listed above, you will be asked for identification when voting for the first time, unless you re exempt from doing so under federal or State law.
(12)Do you wish to declare a political party affiliation? (Optional):
[]YES. Name of Party:
[]NO. I do not wish to declare a political party affiliation at this time.
(13) Declaration -- I swear or affirm that:
I am a U.S. citizen.
I live at the above address.

I will be at least 18 years old on or before the day of the next election.
I am not on parole, probation or serving a sentence due to a conviction for an indictable offense under any federal or State laws.
I UNDERSTAND THAT ANY FALSE OF FRAUDULENT REGISTRATION MAY SUBJECT ME TO A FINE OF UP TO $15,000, IMPRISONMENT UP TO FIVE YEARS, OR BOTH PURSUANT TO R.S. 19:34-1
. . . . . . . . . . . . . . . . . . . . .
Signature or                    Date
mark of the
registrant

(14) if applicant is unable to complete this form, print the name and address of individual who completed this form.
. . . . . . . . . . . . . . . . . . . . .
Name
. . . . . . . . . . . . . . . . . . . . .
Address"

*N.J.S.A.* 39:2–3.2(a) states that the Secretary of State, with the assistance and concurrence of the Director of the Division of Motor Vehicles, "shall formulate a means of permitting a person to simultaneously apply for a motor vehicle driver's license and to register to vote...." The statute further provides that the Division of Motor Vehicles "upon receipt of a completed voter registration application under this section," shall date stamp the completed registration application on the date it was received and thereafter forward the document to the Secretary of State.

The requirements of the statute were implemented with the adoption of *N.J.A.C.* 13:17–1.8(b) and (c). Subsection b provides:

The Motor Vehicle Commission (MVC) shall administer a voter registration solicitation upon receipt of each in-person [sic] for driver's license, including new application, renewal, change of address, and identification signature card. Applicants who respond affirmatively shall be provided an abbreviated New Jersey voter

registration application signature card, which lists the declaration statement in accordance with *N.J.S.A.* 19:31–6.4 and information item lines for: county of residence, telephone number (optional), date, signature and printed name. All information must be legible for acceptance.

It is evident from a consideration of both *N.J.S.A* 19:31–6.4 and *N.J.A.C.* 13:17–1.8(b) that unless an applicant is unable to "complete" the form, a completed application requires, among other things, a signed declaration of eligibility to vote by the applicant. Signing a voter registration application form is required under federal law, as well.

*N.J.S.A.* 39:2–3.2 was adopted in 1994 in response to the 1993 National Voter Registration Act (NVRA), 42 *U.S.C.* §§ 1973 gg–1 to –10. The NVRA was designed, among other things, to ensure that persons eligible to vote in elections for federal office would be accorded a voter registration opportunity when appearing at a motor vehicle agency to obtain or renew a driver's license. 42 *U.S.C.* § 1973 gg–3(a)(1) states, "[e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal offices *unless the applicant fails to sign the voter registration application.*" (Emphasis added). The importance of a signature is further underscored by the fact that in New Jersey, signature copy registers and signature comparison records are utilized to identify registered voters at the polls and to prevent election fraud. *See, e.g., N.J.S.A.* 19:31–21 and *N.J.S.A.* 19:31A–8.

New Jersey's requirement that its citizens register to vote is not an insubstantial obligation. The registration requirement is designed " 'to ensure that only eligible persons vote and [ ] that they vote only once.' " *Lesniak v. Budzash,* 133 *N.J.* 1, 9, 626 *A.*2d 1073 (1993)(quoting Note, *Developments–Election Law,* 88 *Harv. L.Rev.* 1111, 1116 (1975)). "[W]ithout a suitable method to prepare an authentic list of qualified voters in advance of election day, the confusion at the polls and the opportunity for fraudulent ballots

might jeopardize the election process." *Gangemi v. Rosengard,* 44 *N.J.* 166, 172–73, 207 *A.*2d 665 (1965).

The trial judge found that while Hess signed her driver's license, she did not sign any other document at that time. A voter registration application provided to citizens appearing before the Motor Vehicle Commission requires, as noted above, a signature separate from the signature on the driver's license renewal.

*N.J.S.A.* 19:31–6(b) provides that a voter may register by "*completing* a voter registration form while applying for a motor vehicle driver's license from an agent of the Division of Motor Vehicles. . . ." (Emphasis added). The factual findings by the trial court that Hess did not "complete" the registration form are supported by sufficient credible evidence in the record and thus are binding on appeal. *Rova Farms, supra,* 65 *N.J.* at 483–84, 323 *A.*2d 495.[1]

While the trial judge's decisions with respect to Cheng and Hess did not require any findings of fact or conclusions of law with respect to the domicile of those voters, the trial judge's determination with respect to McGloan and Hoffman do entail a determination as to whether they were domiciled within South Amboy at the time of the election. Accordingly, we briefly address "domicile."

■ *N.J.S.A.* 19:4–1 provides that every person qualified by Article II, paragraph 3 of the New Jersey Constitution not

---

[1] *Amicus curiae* ACLU advances the additional argument on behalf of Hess that because she was not given prompt notice of the rejection of the provisional ballot by the Middlesex County Board of Elections, nor an opportunity to contest that decision, she was denied due process. The ACLU asserts that election boards should follow a procedure whereby a voter is notified that his or her provisional ballot is being disputed and the voter is given an opportunity to be heard before the board decides to accept or reject the ballot. While there is some merit to this argument, the record before the trial court is insufficiently developed to permit a careful consideration of this issue. Further, the issue is one more properly addressed to the Legislature. In any event, we do not have to reach this issue because Hess was afforded a full opportunity to challenge the rejection of her provisional ballot before the trial court, and thus her due process rights to challenge rejection of her vote were preserved and honored.

otherwise disqualified to vote, shall have the right of suffrage and shall be entitled to vote in the polling place assigned to the election district in which he "actually resides and not elsewhere." Residence under *N.J.S.A.* 19:4–1 means domicile. *State v. Benny,* 20 *N.J.* 238, 252–54, 119 *A.*2d 155 (1955); *Petition of Kriso,* 276 *N.J.Super.* 337, 341, 647 *A.*2d 1373 (App.Div.1994). In order to vote, one must be registered in his or her domicile. *In re Application of Langbaum,* 201 *N.J.Super.* 484, 491, 493 *A.*2d 580 (App.Div.), *certif. denied,* 101 *N.J.* 298, 501 *A.*2d 957 (1985). One may have multiple residences, but only one "domicile" for purposes of voting. *State v. Atti,* 127 *N.J.L.* 39, 41, 21 *A.*2d 603 (Sup.Ct.1941), *aff'd,* 128 *N.J.L.* 318, 25 *A.*2d 634 (E. & A.1942).

▮▮▮ The permanent home of a person is considered his domicile and the place of his domicile determines his right to vote. *Mercadante v. City of Paterson,* 111 *N.J.Super.* 35, 266 *A.*2d 611 (Ch.Div.1970), *aff'd,* 58 *N.J.* 112, 275 *A.*2d 440 (1971). Factors relevant in determining domicile include billing address, residence from which tax returns are filed, mailing address, membership in local clubs, driver's license, place where a person spends the greatest amount of time, newspaper subscriptions, and the like. *See, e.g., Benny, supra,* 20 *N.J.* at 240–49, 119 *A.*2d 155. If a voter's residence is challenged, determination of domicile necessitates consideration of these factors. *Id.* at 255, 119 *A.*2d 155. Courts have construed the issue of domicile broadly and flexibly. *Kriso, supra,* 276 *N.J.Super.* at 341, 647 *A.*2d 1373.

▮▮▮ Considering these factors in light of the preponderance of the evidence standard which applies in election contests, *In re Gen. Election of Nov. 5, 1991, supra,* 255 *N.J.Super.* at 702–03, 605 *A.*2d 1164, the testimony of McGloan showed that, at best, the physical spot she identified as her home was nothing more than a back room in her beauty salon and that she spent much of her time staying at the home of her disabled brother in a neighboring town. The proofs also showed that the room was not equipped for residential occupancy and had no kitchen facilities. Given this, and given the fact that the trial judge found her to be less than

credible, the judge was justified in determining that the evidence did not support her claim to be domiciled in South Amboy on the day of the election.

Finally, we are satisfied that the court erred in making a determination that Hoffman was eligible to vote in South Amboy. The undisputed testimony showed that, at least since 2009, Hoffman lived exclusively in Sayreville and did not own a home or otherwise maintain a domicile within South Amboy. While the trial judge was satisfied that Hoffman "intended to make South Amboy her permanent home," mere intent or an inchoate desire to establish a domicile at a given location is insufficient to establish domicile as a matter of law. *Perri v. Kisselbach*, 34 *N.J.* 84, 88–89, 167 *A.*2d 377 (1961). Rather, "that intention [also] must be accompanied by acts of living, dwelling, lodging or residing sufficient to reasonably establish that it is the real and actual residence of the voter." *Haack v. Ranieri*, 83 *N.J.Super.* 526, 542–43, 200 *A.*2d 522 (Law Div.1964)(quoting *In Re McCarthy*, 18 *N.J. Misc.* 5, 14, 10 *A.*2d 142 (Cir.Ct.1939)). Accordingly, the determination of the trial judge to allow Hoffman to vote in South Amboy was error. However, disallowing Hoffman's vote does not change the election result and therefore does not invalidate the election itself. *N.J.S.A.* 19:29–1(e).

As noted earlier, counsel for O'Connor on the day of the hearing advised both the trial court and counsel that he wished to present evidence challenging the votes of the Desais and McQuade on the ground that they did not live in the election district. The proposed evidence apparently consisted of deeds purporting to show that these individuals did not own the property at a given address in South Amboy and the testimony of one individual who bought residential property from the Desais prior to the election. Counsel for O'Connor made no proffer that these allegedly unlawful votes were cast for Henry—a burden which a contestant would generally be required to carry. *See Application of James T. Murphy*, 101 *N.J.Super.* 163, 167, 243 *A.*2d 832 (App.Div.), *certif. denied*, 52 *N.J.* 172, 244 *A.*2d 302 (1968)("the contestant has not

only the burden of showing that illegal votes were cast in numbers sufficient to change the result if they had in fact been cast for the contestee, but also the burden of showing, to the extent possible under the circumstances, for whom the illegal votes were cast.").

The trial court acted within its discretion in not allowing an amendment to the election contest petition filed on behalf of O'Connor on the very day of the hearing. *N.J.S.A.* 19:29–4 provides that the court shall set a suitable time for a hearing not more than thirty days after the filing of the petition. *N.J.S.A.* 19:29–5 provides that the proceeding shall be "similar to those in a civil action so far as practicable, but shall be under the control and direction of the court." The statute adds that the court shall hear and determine the matter without a jury and shall have the power to order any amendments in the petition.

■ Counsel for O'Connor did not seek an adjournment of the proceedings but rather simply wished to present evidence that had not earlier been brought to the attention of the court and counsel. Election statutes are designed to provide a speedy and efficient mechanism for a challenge to be brought and completed, *In re Contest of November 8, 2005 General Election,* 192 *N.J.* 546, 572, 934 *A.*2d 607 (2007), and to insure that parties interested in the contest obtain a "statement of charges sufficiently explicit to permit preparation for trial." *In re Smock,* 5 *N.J.Super.* 495, 500, 68 *A.*2d 508 (Law Div.1949). The trial court is given broad discretion over the control and direction of the proceedings, including the right to order amendments as to form and substance. *In re Keogh–Dwyer,* 85 *N.J.Super.* 188, 202, 204 *A.*2d 351 (App. Div.1964), *rev'd on other grounds,* 45 *N.J.* 117, 211 *A.*2d 778 (1965).

We find no abuse of discretion here. There was no showing that the disallowance of these votes would have changed the result of the election nor did respondents or the voters whose votes were challenged have an opportunity to adequately address the factual claims raised by counsel for O'Connor. Under these circum-

stances, the trial court did not abuse its discretion in disallowing such testimony.

Finally, there is nothing to show that the failure of the Middlesex County Board of Elections or the Middlesex County Clerk to account for the alleged absence of three unused provisional ballots could have affected the outcome of the election. Technical irregularities which do not affect the actual vote are not sufficient to set aside an election and thereby defeat the will of the electorate. *See Hartnett, supra,* 163 *N.J.Super.* at 265, 394 *A.2d* 871; *see also Wene, supra,* 13 *N.J.* at 202, 98 *A.2d* 573. Indeed, because no one actually counted the provisional ballot forms as they were bundled at the printer, it cannot even be said with certainty that three ballots were in fact unaccounted for. Because this issue cannot possibly affect the integrity of the election itself, we decline any further analysis.

Affirmed on the appeal and the cross-appeal.